CYBER MEDIA GROUP, INC., David Marcus Individually and on behalf of Leonard Drew, Brian Weinstein, Dom Graffeo, Donald Berman, Howard Greenberg, Lester Morse, Steven Morse, Randy Amus, Roger Gruber, Alden Greenlawn, Thomas Sifford, Francis Sifford, James Zelinski, Greg Sablic, Robert Frome, Michael Wainstein, Arnold, Greenberg, Jack Schwartz, Robert Friedland, Click Here To Advertise, Inc., Blue Fountain, Inc., Peter Mitas, Tim Nielson, Gabriel Libutti, Steven Holman, Jan Holman, Philip Caruso, Kevin Kent, Columbia Equities Ltd., ETJ, Inc., Sean Dodick, Leads Direct Path Inc., New Millennium Advertising, Inc., Luxe, Inc., Main Frame Consulting, Inc., James Varvaro, Logon Enterprises, Inc., Vito Foraci, Plaintiffs,

v.

ISLAND MORTGAGE NETWORK, INC., Apponline.Com, Inc., Edward Capuano, Patrick A. Reilly, Jeffrey Skulsky, Paul Skulsky, Cindy Eisele, Werblin, Casuccio & Moses, P.C., Citrin, Cooperman & Company, LLP, and Courtney Smith, Defendants.

No. 00-CV-4026 (JS) (MLO).

United States District Court, E.D. New York.

Jan. 15, 2002.

Steven R. Schlesinger, Jaspan Schlesinger Hoffman LLP, Garden City, NY, for Plaintiffs.

I. Michael Bayda, Jacobs Persinger & Parker, New York, NY, for Defendants Patrick A. Reilly.

Fred N. Knopf, Wilson, Elser et al., New York, NY, for Werblin, Casuccio & Moses, P.C.

John H. Eickmeyer, Vedder, Price, Kaufman & Kammholz, New York, NY, for Citrin, Cooperman & Co.

Judith R. Cohen, Squadron, Ellenoff, Plesent & Sheinfeld, LLP, New York, NY, for Courtney Smith.

### MEMORANDUM AND ORDER

SEYBERT, District Judge.

The above named plaintiffs ("Plaintiffs") commenced this action on July 17, 2000 through filing a complaint and requesting that the Court issue an order to show cause. Briefly, Plaintiffs allege in their initial complaint that the above named defendants "knowingly and intentionally communicated ... misleading and false statements of material facts to Cyber Media during negotiations wherein shareholders of Cyber Media would "obtain shares of [Apponline.com, Inc. ('AOP')] in exchange for their respective shares of Cyber Media." *Compl.* at ¶¶ 35 and 46.

Presently pending before the Court are four separate motions to dismiss made by certain of the defendants.[1]

## I FACTUAL BACKGROUND

In or about December 1999, AOP and Cyber Media Group, Inc. ("Cyber Media") began negotiating the terms of a stock purchase agreement, whereby AOP would offer shares of its common stock in exchange for common stock held by shareholders of Cyber Media. *See Amended Complaint* (hereinafter referred to as "*Am.Comp.*") ¶ 35. AOP was represented in the negotiations by various individuals, including Capuano, Jeffrey Skulsky, Paul Skulsky and Reilly. *Id.* at ¶ 36. Cyber Media and AOP entered into an exclusivity agreement on February 8, 2000, which barred Cyber Media from negotiating with any other prospective buyers for a period of thirty days. Shortly thereafter, an agreement was reached whereby AOP would purchase the outstanding shares of Cyber Media stock using AOP stock and options (the "SPA"). *Id.* at ¶¶ 39-41.

Plaintiffs allege in their first amended complaint that Cyber Media was enticed "to agree to the purchase [of its shares by

[1]. Defendants Patrick Reilly ("Reilly"), Werblin, Casuccio & Moses, P.C. ("Werblin"), Citrin, Cooperman & Company, LLP ("Citrin") and Courtney Smith ("Smith") have moved, in four separate motions, to dismiss Plaintiffs' allegations for the reasons set forth herein. (Reilly, Werblin, Citrin and Smith shall be referred to collectively herein as "Defen- dants".) The Court notes that defendants Island Mortgage Network, Inc. ("Island"), AOP, Edward Capuano ("Capuano"), Jeffrey Skulsky, Paul Skulsky and Cindy Eisele ("Eisele") are currently in default as they have not filed an answer in this action. This Memorandum and Order shall address only the currently pending motions to dismiss.

AOP] through the use of various documents and oral statements which contained false and misleading statements of material fact" and that the Defendants "knowingly and intentionally communicated the misleading and false statements of material facts to Cyber Media during the negotiations of the [SPA]." *Id.* at ¶¶ 45 and 46. Plaintiffs claim that they were damaged by Defendants' alleged false and misleading statements and allege ten separate causes of action seeking recovery.

Plaintiffs' first cause of action alleges common law fraud and is asserted against defendants, Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky, Eisele, Werblin, Citrin and Smith. Plaintiffs' second cause of action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and is asserted against defendants Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky, Eisele, Werblin, Citrin and Smith. Plaintiffs' third cause of action alleges violations of Section 18(a) of the Exchange Act and is asserted against defendants Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky, Eisele and Smith. Plaintiffs' fourth cause of action alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et. seq.* ("RICO") and is asserted against defendants Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky, Eisele, Werblin, Citrin and Smith. Plaintiffs' fifth cause of action alleges violations of Section 349 of the New York General Business Law and is asserted against defendants Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky, Eisele, Werblin, Citrin and Smith. Plaintiffs' sixth cause of action alleges breach of Defendants' covenant of good faith and fair dealing and is asserted against defendants Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky, Eisele, Werblin, Citrin and Smith. Plaintiffs' seventh, eighth and ninth causes of action each allege breach of contract and each is as-

serted against defendants Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky and Eisele. Finally, Plaintiffs' tenth cause of action alleges unjust enrichment and is asserted against defendants Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky, Eisele, Werblin, Citrin and Smith.

Plaintiffs set forth a number of specific allegations to support their numerous claims. The incidents for which Plaintiffs have brought suit are alleged to have begun in December 1999 when negotiations over the terms of the SPA commenced and are alleged to have continued through the actual signing of the SPA on March 10, 2000. Plaintiffs allege that during the negotiation period, Defendants misrepresented the financial condition of AOP through statements made both orally and in writing. *See Am.Comp.* at ¶ 48. Specifically, Plaintiffs claim that AOP did not disclose, or materially misrepresented, to Plaintiffs certain alleged risk factors, including: the net worth and value of AOP, which was stated in various publically filed forms; the fact that the New York State Department of Banking was conducting an ongoing investigation into alleged fraudulent business operations; that various title insurance companies would not accept non-certified funds from defendants; that AOP had acquired a minimum of twenty five mortgage banking and brokerage firms in the recent past; and that AOP was engaged in deceitful business practices. *See id.* Plaintiffs allege that all material misstatements were intentionally made and were designed to induce Plaintiffs to enter into the SPA and to artificially inflate the price of AOP stock. *See id.* at ¶¶ 49-51.

Set forth below are Plaintiffs' specific allegations as categorized in the Amended Complaint.

### A. Alleged False and Misleading Statements Made in Publically Filed Documents

Plaintiffs allege that Werblin, which prepared and audited AOP's prospectus, dated January 14, 2000 ("Prospectus"), Form 10-QSB for the Fiscal Period Ended March 31, 1999 ("March 10Q"), Form 10-QSB for the Fiscal Period Ended June 30, 1999 ("June 10Q") and Form 10-QSB for the Fiscal Period Ended September 30, 1999 ("September 10Q") (March 10Q, June 10Q and September 10Q shall be referred to collectively herein as "Forms 10Q"), intentionally ignored, or failed to investigate and include, AOP's true financial condition in such publically filed forms. *See id.* at ¶¶ 57-87. Plaintiffs further allege that Capuano, Reilly, Jeffrey Skulsky and Paul Skulsky intentionally mislead Plaintiffs through the issuing of the aforementioned false and misleading statements in connection with the preparation and authorization of the filing of the Prospectus and Forms 10Q and that Plaintiffs relied upon such statements. *See id.* at ¶¶ 57-87.

### B. Plaintiffs' Allegations of Verbal Misrepresentations

Plaintiffs allege that Paul Skulsky intentionally misrepresented that AOP planned to establish an internet division of its services and that such plans were also asserted in press releases dated March 16, 2000 and March 20, 2000. *See id.* at ¶¶ 90-91. Moreover, Plaintiffs allege that Defendants "had knowledge of AOP's actual financial condition at the time of the preparation and filing of its Forms 10Q and 10-K yet authorized its filing and continued to mislead and intentionally communicate false information during the negotiation period." *Id.* ¶ 95.

### C. Other Alleged Acts, Omissions and Misrepresentations

Plaintiffs allege that Smith engaged in negotiations in October 1999 with a venture capital fund that held stock in AOP in an effort to become CEO of the venture capital fund, Inculab. *See id.* at ¶¶ 104-06. Plaintiffs further allege that as part of Smith's compensation for his duties as CEO of Inculab, he was to receive stock in Inculab, which value was directly tied to the value of the stock of AOP. *See id.* at ¶¶ 106-09. Plaintiffs assert that the stock price of AOP increased because Smith noted on CNN that AOP was a "double your money stock." *Id.* at 111-112. Finally, Plaintiffs assert that the principals of Cyber Media were directed to watch CNN when Smith was to name AOP as a "double your money stock" and that such statements caused AOP's stock price to surge, which in turn caused Inculab's asset value to increase, thereby increasing the value of the compensation package offered to Smith by Inculab. *See id.* at ¶¶ 112-115.

## II PROCEDURAL HISTORY

As previously noted, Plaintiffs commenced suit by filing a complaint and requesting that the Court issue an order to show cause. The return date for Plaintiffs' order to show cause was adjourned indefinitely as a result of Island and AOP's pending bankruptcy proceedings. The remaining parties were directed by the Court to submit briefs on the issue of whether the action should proceed without Island and AOP. Subsequently, following multiple stipulations and orders of the Court dismissing the pending motions without prejudice and adjourning the time in which to answer and/or respond to the complaint and granting a stay during the pendency of certain bankruptcy proceedings, the action was restored to the Court's calendar by stipulation and order of the parties signed by the Court on January 25, 2001. Following the Court's lifting of the stay, Plaintiffs filed an amended complaint

and a revised amended complaint on July 26, 2001.[2] Subsequently, all pending motions were restored to the calendar.

## III DEFENDANTS' MOTIONS TO DISMISS

A district court should grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *Annis v. County of Westchester*, 36 F.3d 251, 253 (2d Cir. 1994).

In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff and accept the factual allegations as true. *H.J. Inc.*, 492 U.S. at 249, 109 S.Ct. at 2906; *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.*, 23 F.3d 636, 639 (2d Cir.1994); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed. R. Civ. P. 8(a)(2) to demonstrate liberal system of "notice pleading" employed by the Federal Rules of Civil Procedure).

The Court's duty "is merely to assess the legal feasibility of the [amended] complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). *Accord Goldman v.*

*Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123-24 (2d Cir.1991) (noting that plaintiff is not compelled to prove his or her case at the pleading stage).

Additionally, a claimant is not required to set out in detail the facts upon which he or she bases a claim. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A claimant need only give a statement of his or her claim that will give defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Id.* Therefore, where a complaint is filed that charges each element necessary to recover, dismissal of the case for failure to set out evidential facts can seldom be warranted. *United States v. Employing Plasterers' Ass'n of Chicago*, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987). Additionally, on a motion to dismiss, a complaint shall be deemed "to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... as well as public disclosure documents required by law to be, and that have been, filed with the SEC, ... and documents that the plaintiffs either possessed or knew about and upon which [they] relied in bringing the suit...." *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir.2000) (citations omitted).

---

**2.** All references herein to the Plaintiffs' Amended Complaint shall refer to the revised amended complaint filed by Plaintiffs on July 26, 2001.

Defendants Citrin, Werblin, Reilly and Smith have each moved to dismiss Plaintiffs' Amended Complaint in four separate motions. Each motion alleges that Plaintiffs have failed to allege a cause of action upon which relief can be granted as to each of the claims asserted in the Amended Complaint with respect to each defendant [3]. With respect to certain of the claims, the Court will address each defendant's claim individually, however, where appropriate, the Court will address the claims in a consolidated manner.

It is within the framework set forth above that the Court addresses the present motions.

## A. Federal Securities Law Claims

### (1) Securities Fraud Claim pursuant to Section 10(b) of the Exchange Act

■ To state a claim under Section 10(b) or Section 10b-5 [4], Plaintiffs must allege that: Defendants made "(1) misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which [P]laintiffs relied; and (5) that [P]laintiffs' reliance was the proximate cause of their injury." *IBM Corp. Sec. Litig.*, 163 F.3d 102, 106 (2d Cir.1998) (quoting *Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 264 (2d Cir.1993)). Defendants Werblin, Citrin and Reilly challenge the sufficiency of Plaintiffs' allegations on a number of levels. Smith similarly challenges the sufficiency of Plaintiffs' allegations but bases his challenges on different grounds.

First, Defendants contend that the allegations fail to allege any misstatement or omission made by the Defendants. Defendants further argue that any such allegations of a misstatement or omission are not adequately particularized pursuant to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule

---

**3.** Defendants Citrin and Werblin's motions to dismiss each make the same four arguments: (1) Plaintiffs' federal securities law claims must be dismissed; (2) Plaintiffs' purported RICO claim must be dismissed; (3) Plaintiffs' common law fraud claim must be dismissed; and (4) Plaintiffs' other common law claims are legally insufficient and must be dismissed. Defendant Reilly's motion to dismiss raises various points: (1) Reilly adopts the arguments made in the Citrin motion to dismiss; (2) Reilly argues that Plaintiffs' common law fraud claim must be dismissed; (3) Reilly argues that Plaintiffs' securities fraud claims must be dismissed; and (4) Reilly argues that Plaintiffs' claims for breach of the covenant of good faith and fair dealing, breach of contract and unjust enrichment must fail. Defendant Smith's motion to dismiss raises arguments similar to those addressed in the previous motions. Smith first argues that the securities fraud and common law fraud causes of action must be dismissed. Smith then argues that Plaintiffs' RICO claim and claims for breach of the covenant of good faith and fair dealing, breach of contract and unjust enrichment must be dismissed for the reasons asserted in Citrin's Memorandum of Law in Support of its motion to dismiss.

**4.** SEC Section 10b-5 provides that

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

9(b)") and Section 78u-4(b) of the Private Securities Litigation Reform Act ("PSLRA"), and that Plaintiffs' filing of the Amended Complaint with Defendants grouped together must fail because the separate acts set forth by each defendant have not been pleaded. Second, Defendants argue that the Amended Complaint fails to allege facts supporting a strong inference that Defendants acted with scienter. Third, Citrin, Werblin and Reilly argue that Plaintiffs' attempted imposition of aiding and abetting liability is impermissible. Fourth, Defendants maintain that Plaintiffs have not alleged facts sufficient to sustain their "control person" claim under Section 20(a) of the Exchange Act. Finally, Smith's arguments for dismissal, other than those previously set forth, include: (1) The only statement attributable to Smith is not actionable; (2) Plaintiffs have failed to establish reasonable reliance on Smith's statement; and (3) Smith contends that liability pursuant to Section 18(a) of the Exchange Act is inapplicable because he has not filed any document pursuant to the Exchange Act nor have Plaintiffs alleged as much. The Court will address each contention in turn.

(a) Misstatements or Omissions made by Defendants and Heightened Pleading Requirements Rule 9(b) and Section 78u-4(b) of the PSLRA.

■ Plaintiffs alleging fraud pursuant to Section 10b-5 must plead that Defendants made a misstatement or omission of material fact. Rule 9(b) and the PSLRA each require fraud to be pleaded with particularity. Moreover, where violations by multiple defendants are alleged, Plaintiffs must set forth the specific nature of each defendant's participation in the alleged fraud. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

■ The requirement that fraud be pleaded with particularity is intended to provide notice of a plaintiff's claim and the ability to appropriately defend the action as well as to ensure that a defendant's reputation or goodwill is not unnecessarily harmed. *See id.* at 1247. The PSLRA provides, with respect to the requirement that fraud be pleaded with particularity, that a "complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The preceding requirements are more lax where matters are "peculiarly within the defendant's knowledge." *Ahmed v. Trupin,* 781 F.Supp. 1017, 1024 (S.D.N.Y.1992).

■ The materiality of a statement or omission cannot be determined in a vacuum nor can a blanket statement be made as to the materiality of any statement or omission in particular. The circumstances in existence at the time that the statement or omission was or should have been made are relevant to determine whether the misstatement or omission was material. *See Manavazian v. Atec Group, Inc.,* 160 F. Supp. 2d 468, 478 (E.D.N.Y.2001).

■ Materiality with respect to omissions requires "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995) (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). A misstatement of a material fact must relate to facts that " 'affect the probable future of the company and [that] may affect the desire of investors to buy, sell or hold the

company's securities.' " *Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 179 (2d Cir.2001) (quoting *Texas Gulf Sulphur Co. v. Crawford,* 401 F.2d 833, 848 (2d Cir.1968)).

 As noted above, Plaintiffs allege that false statements were included in publically filed forms and that Defendants knew or should have known that such statements were false. The statements that are alleged to have been false relate to issues that could clearly be "viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," or as affecting the future of AOP and an investor's desire to buy or sell AOP securities. *Acito,* 47 F.3d at 52. The Court therefore finds that Plaintiffs' allegations relate to misstatements and omissions of material fact. Moreover, although Defendants argue that Plaintiffs failed to "plead the acts complained of by each defendant" and instead employed the term "defendants," thereby failing to plead fraud with particularity by identifying each offending party, the Court finds that Plaintiffs adequately differentiate the claims made against each defendant. *Citrin Memorandum of Law in Support of its Motion to Dismiss,* pg. 8, note 1.

Werblin argues in its motion to dismiss that the "only substantive allegation made as to Werblin" with respect to the Section 10b claim is the allegation that Werblin was duty bound to investigate and report AOP's "misstated financial Forms and acquisition of additional entities." *Werblin Memorandum of Law in Support of its Motion to Dismiss,* pg. 7-8. Werblin further argues that Plaintiffs did not allege that Werblin had a duty to come forward with any information, that Werblin's relationship with Plaintiffs was fiduciary, or that any statement was made by Werblin upon which Plaintiffs relied. *See id.*

Citrin and Reilly argue that the Plaintiffs do not allege that any of the financial statements were prepared by them, nor do Plaintiffs allege any involvement on their part and, therefore, "[P]laintiffs have failed to meet the most basic pleading requirement for a Section 10(b) claim." *Citrin Memorandum of Law in Support of its Motion to Dismiss,* pg. 7. Citrin, Reilly and Werblin cite *Chiarella v. United States* for the proposition that "a claim based on a material omission can be maintained only where the defendant had a duty to speak," however, it is inappropriate at this time for the Court to determine whether either of the parties had a duty to divulge facts of which they were or should have been aware. *Id.* (citing 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980)). At this stage of the proceedings, it is enough that Plaintiffs allege that Citrin, Reilly and Werblin had a duty to disclose material information that they should have been aware of and that material information that was disclosed was misleading.

Finally, Citrin argues that AOP did not retain Citrin as its accountant until January 27, 2000 [5]. Citrin's alleged involvement in preparing or certifying false documents is to be determined based upon the facts and it would be premature to make such a determination at this time.[6]

---

5. Plaintiffs concede that Citrin was not hired until January 27, 2000, but argue that Citrin had a duty to review the publicly filed documents and that Citrin knew of the alleged fraud.

6. Note that the Court is unable to determine from the pleadings the exact documents for

which Citrin was responsible. Although Citrin's involvement is an issue of fact that will not be determined here and Plaintiffs allegations are sufficient to withstand the requirements of a motion to dismiss, based upon Plaintiffs averments, it seems that Citrin lacks any connection, due to the chronology of

Accordingly, Citrin, Reilly and Werblin's argument that Plaintiffs' securities fraud claim should be dismissed for failure to plead with particularity and that Plaintiffs failed to allege any misstatement or omission of material fact made by the them is DENIED.

Smith argues that the statements attributed to him are not actionable because "[s]uch vague and general statements of optimism constitute no more than puffery and are understood by reasonable investors as such." *Smith Memorandum of Law in Support of his Motion to Dismiss,* pg. 8. Smith further argues that such statements are not material and, therefore, are not actionable under Section 10b because Section 10b requires a *material* misstatement. *Id.* For statements to be actionable pursuant to Section 10b, Plaintiffs must show that the statements were "(1) misstatements or omissions of material fact." *IBM Corp. Sec. Litig.,* 163 F.3d at 106.

 "Materiality is a mixed question of law and fact." *Ganino v. Citizens Util. Co.,* 228 F.3d 154, 162 (2d Cir.2000). The Court must determine whether Smith's statements that AOP was a "double your money stock" are misstatements or omissions of "material fact" pursuant to Section 10b. However, "a complaint may not properly be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id.* (citing *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) (internal quotation marks omitted)). Smith's statement was allegedly asserted on CNN as an "optimistic prediction as to how the AOP stock *might* perform" and not as a statement of

events, with statements that AOP could have

fact. *Smith Memorandum of Law in Support of his Motion to Dismiss,* pg. 9.

 The Second Circuit has noted that "[s]tatements regarding projections of future performance may be actionable under Section 10(b) or Section 10b-5 if they are worded as guarantees or are supported by specific statements of fact ... or if the speaker does not genuinely or reasonably believe them." *IBM Corp. Sec. Litig.,* 163 F.3d at 107 (citations omitted). Furthermore, "expressions of opinion and the projections contained in the statements" are "not beyond the reach of the securities laws." *Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 266 (2d Cir.1993) (noting that the complaint did not allege that defendants did not believe the statements they made). Other circuits have held that "[l]iability for ... forecasts attaches under Section 10b-5 only if at the time of publication one of three implied factual assertions is inaccurate: (1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement." *VeriFone Sec. Litig.,* 11 F.3d 865, 870-71 (9th Cir.1993) (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 501 (9th Cir.1992)) (internal quotation marks omitted). The Court of Appeals for the Fifth Circuit held that predictions are not facts in and of themselves but they contain the "factual assertions that the speaker genuinely believes the statement is accurate, that there is a reasonable basis for that belief, and that the speaker is unaware of any undisclosed facts that would tend to seriously undermine the accuracy of the statement." *Credit Suisse First Boston Corp. Sec. Litig.,* 97 CV 4760(JGK), 1998 WL 734365, *5, 1998 U.S. Dist. Lexis 16560, *14 (S.D.N.Y. Oct. 20, 1998) (citing *Rubinstein v. Collins,* 20

relied upon.

F.3d 160, 166 (5th Cir.1994)). The materiality of such unstated factual assertion is directly related to prediction or statement made. Materiality and scienter remain two separate elements and it is conceivable that a fraudulent statement or omission could be immaterial, and therefore not actionable, even if the speaker knew at the time that the statement was made that it was false if no reasonable investor would rely on the statement or it would not change the total mix of the investment. However, as noted above, it is rarely proper to dismiss a claim at this stage for a lack of materiality. The resulting rule of law is that an opinion or prediction can be actionable pursuant to Section 10b-5 if such statement is " 'made in bad faith or [is] not reasonably supported by evidence available to the person or entity that issues the statement[ ],' " and that statement is material. *Id.*, *5, 1998 U.S. Dist. Lexis 16560, *14 (quoting *Kurzweil v. Philip Morris Cos., Inc.*, 94 CV 2373, 1997 WL 167043, *7, 1997 U.S. Dist. LEXIS 4451, *26 (S.D.N.Y. Apr. 9, 1997)).

■■■ The statements attributed to Smith standing alone are opinions or predictions and may not be material. As previously noted, the materiality requirement of a misrepresentation can be satisfied through " 'alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions.' " *Manavazian*, 160 F. Supp. 2d at 478. The question then becomes whether a reasonable investor would consider Smith's statement that AOP was a "double your money stock" significant in making an investment decision to purchase AOP stock. While it seems that it would be unreasonable for an investor to base an investment decision on one analyst's assertion that a particular stock's value would double or that such an assertion could be more than mere puffery or optimism, rea-

sonable minds may differ as to whether the particular statement is material. Because of the very lenient pleading requirements for materiality and viewing all inferences in favor of Plaintiffs, the Court finds that Smith's statements were material for purposes of Section 10b-5. Furthermore, the Amended Complaint states that Smith knew that the statement was false at the time it was made and Smith's failure to disclose his impending conflict of interest could constitute a material omission. For the foregoing reasons, Smith's motion to dismiss Plaintiffs' Section 10b claim is DENIED.

### (b) Pleading Requirement for Scienter

■■■ Smith claims that Plaintiffs' Section 10(b) and Section 10b-5 claims brought against him should be dismissed for failure to satisfy the heightened pleading requirements of Rule 9(b) and Section 78u-4(b) of the PSLRA. As previously noted "[t]o state a cause of action under Section 10(b) and Section 10b-5, a plaintiff must plead that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." *Kalnit v. Eichler*, 264 F.3d 131, 137 (2d Cir.2001) (quoting *San Leandro Emerg. Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996)) (citations omitted). "It is well-settled in this Circuit that a complaint alleging securities fraud must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Ganino*, 228 F.3d at 168 (citing *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996); *Acito*, 47 F.3d at 52; *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129-30 (2d Cir.1994)). Rule 9(b) requires that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." However, Rule 9(b) further provides that, "[m]alice, intent, knowledge

and other condition of mind of a person may be averred generally." Rule 9(b). In addition to the Rule 9(b) pleading requirements, the PSLRA also imposes heightened pleading requirements for plaintiffs in securities fraud actions. Section 78u-4(b)(2) of the PSLRA requires a securities fraud complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In a Section 10b-5 action, "the requisite state of mind ... is an intent to deceive, manipulate or defraud." *Ganino*, 228 F.3d at 168. A strong inference arises where the complaint alleges that "defendants: (1) benefitted in a concrete and personal way from the purported fraud ...; (2) engaged in deliberately illegal behavior ...; (3) knew facts or had access to information suggesting that their public statements were not accurate ...; or (4) failed to check information they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir.2000).

■ Plaintiffs allege in the Amended Complaint that Smith stood to benefit from an increase in AOP's stock price because it was directly linked to a compensation package that he was to receive from Inculab, a prospective employer. Plaintiffs also allege that Smith had access to inaccurate financial data, which he failed to verify, prior to touting AOP stock on television. These assertions alone fulfill the third factor above, that defendant "knew facts or had access to information suggesting that [his] public statements were not accurate" and, are therefore, sufficient to satisfy the pleading requirements for scienter. Smith's motion to dismiss the Amended Complaint for Plaintiffs' failure to plead scienter with particularity is DENIED.

Citrin and Werblin argue that the Amended Complaint fails to allege facts giving rise to a strong inference that Citrin and Werblin acted with scienter. As previously noted, a strong inference arises where the complaint alleges that "defendants: (1) benefitted in a concrete and personal way from the purported fraud ...; (2) engaged in deliberately illegal behavior ...; (3) knew facts or had access to information suggesting that their public statements were not accurate ...; or (4) failed to check information they had a duty to monitor." *Novak*, 216 F.3d at 311.

Both Citrin and Werblin argue that "there are no allegations that [they] benefitted in any way from the alleged fraud by the other defendants." *Citrin and Werblin Memoranda of Law in Support of their Motions to Dismiss*, pg. 10. Werblin and Citrin also argue that the Amended Complaint fails to allege that either party made any statements nor does it allege that Werblin or Citrin "had access to information indicating that [their] statements were not accurate." *Id.*

■ As noted above, it is inappropriate at this time for the Court to determine whether either of the parties had a duty to divulge facts of which they were, or should have been, aware. Werblin and Citrin's argument that there are no allegations of access to information that indicated that the statements made were inaccurate fails at this stage because Plaintiffs allege that "[u]pon information and belief, Defendant Werblin P.C., which prepared and audited the aforesaid Prospectus on behalf of AOP, was obligated to investigate and report AOP's true financial condition ... but intentionally ignored and/or failed to include all such information in the Prospectus." *Am.Comp.* ¶ 61; *see also id.* at ¶¶ 68, 75, 83 and 103. It is enough that Plaintiffs allege that Citrin and Werblin had a duty to verify the Forms 10Q and Prospectus and disclose material information of which they

should have been aware.[7] Citrin and Werblin's motions to dismiss the Amended Complaint arguing that Plaintiffs failed to allege scienter are DENIED.

### (c) Aiding and abetting liability attributed Citrin and Werblin

██ Citrin and Werblin argue that Plaintiffs have not alleged sufficient facts to maintain a primary liability claim against them and that Section 10(b) of the Exchange Act does not permit a private cause of action for aiding and abetting. Defendants are correct that aiding and abetting liability is inappropriate, as the Supreme Court in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) held that an actor cannot be held liable as an aider or abetter under Section 10(b). The Court further noted, with respect to parties that are not primary violators, that "[a]ny person or entity, including a lawyer, accountant, or bank, who ... makes a material misstatement (or omission) ... may be liable as a primary violator under 10b-5, assuming all of the requirements for primary liability under Section 10b-5 are met." *Id.* at 191, 114 S.Ct. 1439. The Second Circuit has further enunciated the standard for holding a party liable as a primary violator of Section 10(b). "A defendant must actually make a false or misleading statement in order to be held liable under Section 10(b).' " *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir.1998) (quoting *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir.1997)).

██ Citrin and Werblin's argument that Plaintiffs impermissibly attempted to impose aiding and abetting liability on them must fail. As noted above, Plaintiffs' allegations that both Citrin and Werblin made statements, albeit by failing to fulfill a duty to monitor, that were false or misleading, permit direct liability pursuant to Section 10(b). A breach of the duty to monitor, if, along with the other elements of a Section 10(b) action, proved, can result in a finding of liability. Plaintiffs have therefore pleaded facts sufficient to establish a cause of action for a primary violation of Section 10(b). The Court finds that Citrin and Werblin's motions to dismiss based upon the argument that "Plaintiffs' Section 10(b) claim is an impermissible effort to impose aiding and abetting liability on [them]" must be DENIED.

### (2) "Control Person" Liability Claim pursuant to Section 20(a) of the Exchange Act

Defendants argue that they cannot be considered "control persons" within the meaning of Section 20(a) because they did not have the "potential power to influence and direct the activities of the primary violator." *Citrin Memorandum of Law in Support of its Motion to Dismiss*, pg. 13.

██ To successfully plead control person liability under Section 20(a), Plaintiffs must demonstrate: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) the controlling person's culpability in the primary violation." *Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y.1999)(citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir.1998)).

---

**7.** As noted in footnote 6 above, Citrin's involvement is unclear to the Court. While Plaintiffs have alleged facts sufficient to sustain their claims against Citrin, it seems that Citrin was not engaged until after the Forms 10Q and Prospectus were prepared. Surely no duty requires Citrin to verify all past public filings made by its employer. Unless facts are revealed through discovery that prove Citrin was responsible for any of the public filings, Plaintiffs' claims as against Citrin cannot succeed.

■ As previously set forth, Plaintiffs have sufficiently set forth a primary violation of Sections 10(b) and 10b-5. To survive Defendants' motions to dismiss, Plaintiffs must have alleged that Citrin, Werblin and Reilly had control over the primary violator and are in some way culpable for the underlying violation. Control over a primary violator may be established by showing that the defendant possessed "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." [8] 17 C.F.R. § 240.12b-2. "Actual control requires only the ability to direct the actions of the controlled person, and not the active exercise thereof." *Sanders v. Gardner*, 7 F. Supp. 2d 151, 163 (E.D.N.Y.1998) (citations omitted).

As to the third element, culpability, although not explicitly set forth, there is support for the conclusion that "a willful blindness standard applies, that is, that where the control person 'knew or should have known that primary violator, over whom the person had control, was engaged in fraudulent conduct, but … did not take steps to prevent the primary violation,' there is culpability in the sense required by *First Jersey*" *Dietrich v. Bauer*, 126 F. Supp. 2d 759, 765-66 (S.D.N.Y.2001) (quoting *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 428 (S.D.N.Y. 2000) (applying willful blindness standard and discussing development of case law supporting such a standard since *First Jersey*)).

■ Viewing the allegations in a light most favorable to the Plaintiffs, Citrin, Reilly and Werblin's motions to dismiss must fail. Plaintiffs allege in the Amended Complaint that Citrin, Werblin and Reilly had the ability to direct the actions of AOP, through investigating and disclosing the allegedly fraudulent material and they assert that Reilly controlled, "directly or indirectly, the content of the public statements and financial statements disseminated by AOP." [9] *See Am.Comp.* ¶¶ 75, 77, 83, 85, 95, 103, 126. These allegations fulfill the "control" element required for liability pursuant to Section 20(a). A showing of culpability is fulfilled through Plaintiffs' allegations that "[t]he defendants had actual knowledge of the misrepresentations and omissions of material fact … or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though

---

**8.** Section 20(a) of the Exchange Act provides that:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t.

**9.** In his motion to dismiss, Reilly argues that "[p]laintiffs have incorrectly and irresponsibly alleged … that Reilly was a principal shareholder and controlling officer of AOP. Reilly owned no shares of AOP." *Reilly Memorandum of Law in Support of his Motion to Dismiss*, pg. 2. "The test of whether an individual is a controlling person for the purposes of § 20(a) is not a categorical one that turns solely on the individual's status as an officer or director. The agency guidelines define a 'control person' as one having, directly or indirectly, the power to 'direct or cause the direction of management and policies of a person whether through the ownership of voting securities, by contract, or otherwise.' " *Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 331 (S.D.N.Y.2001) (quoting 17 C.F.R. § 240.12b-2 (emphasis added)). Ownership of shares is not a requirement for "control person" liability pursuant to Section 20(a).

such facts were available to them." *Id.* at ¶ 128. Accordingly, Citrin, Werblin and Reilly's motions to dismiss Plaintiffs' Section 20(a) claims are DENIED.

■■■ Defendant Smith also moved to dismiss Plaintiffs' Section 20(a) claims asserted against him. Smith argues that Plaintiffs "failed to include any allegations at all that Smith controlled AOP ... or any facts from which some inference of control could be drawn." *Smith Memorandum of Law in Support of his Motion to Dismiss,* pg. 21. Plaintiffs claim that they did plead facts which support an inference of control by Smith over AOP. Plaintiffs argue that the facts they allege regarding Inculab's position as a major stockholder in AOP and that Smith was a member of the Board of Advisors of Inculab are sufficient to support their claim that Smith was a "control person." *Plaintiffs' Memorandum of Law in Opposition to Smith's Motion to Dismiss,* pg. 16. Control for purposes of Section 20(a) requires the "power to direct or cause the direction of the management and policies of a person." *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472-73 (2d Cir.1996)(quoting 17 C.F.R. § 240.12b 2). Plaintiffs' argument that Smith had a financial stake in Inculab which would increase proportionally with any increase in AOP stock and that Smith "knew that he had the capacity to influence the value of AOP stock" by declaring it a "double your money stock" do not support the contention that Smith was a control person. *Plaintiffs' Memorandum of Law in Opposition to Smith's Motion to Dismiss,* pg. 16.

■■■ The issue is whether Plaintiffs have met the pleading requirement that Smith had "actual power or influence over" AOP, regardless of whether such control was exercised. *Rich v. Maidstone Fin., Inc.,* 98-CV-2569, 2001 WL 286757, *8 (S.D.N.Y.2001). The requirement can be met through an assertion in the pleadings that support a "reasonable inference of control." *Id.* at * 10. However, a claim that a party is a member of a Board of Directors is insufficient. *See id.* (stating that "pleading officer or director status alone is not enough") (citing *In re Livent, Inc. Sec. Litig.,* 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999)).

■■■ The Amended Complaint sets forth no facts that "establish a reasonable inference of control" on behalf of Smith over AOP's management or policies. The fact that Smith was on the Board of Advisors of Inculab does not, without more, substantiate an inference that Smith had any "actual power or influence" over the "direction of management and policies" of AOP. Smith's motion to dismiss Plaintiffs' Section 20(a) claim against him is GRANTED.

**(3) Section 18(a) of the Exchange Act.**

To state a prima facie case pursuant to Section 18(a) of the Exchange Act, Plaintiffs must plead that they purchased or sold a security in actual reliance on a specifically identified document filed with the SEC. *See Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 552-53 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Heit v. Weitzen,* 402 F.2d 909, 916 (2d Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969)[10]. Section 18(a) also

---

**10.** Section 18(a) provides in pertinent part:
 Any person who shall make or cause to be made any statement in any application, report or document filed pursuant to this chapter or any rule or regulation thereunder ..., which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or

requires that the statement be made in a *document filed* pursuant to the applicable rules and regulations. *See* 15 U.S.C. § 78r(a) (1994).

Plaintiffs argue that on a motion to dismiss, the only facts that the Court should consider are those that have been pleaded and that because Plaintiffs have pleaded that Smith made a statement in a publically filed document their claim should stand. *Plaintiffs' Memorandum of Law in Opposition to Smith's Motion to Dismiss*, pg. 16, note 10. Smith argues that "there are no allegations that Smith made or caused to be made any statements in any SEC filing and thus, there is no basis for any claim against him" pursuant to Section 18(a). *See Smith Memorandum of Law in Support of his Motion to Dismiss*, pg. 21.

 After thoroughly reviewing the Amended Complaint, the Court cannot find any allegation made by Plaintiffs that Smith made, or caused to be made, any statement, much less a false or misleading statement, in a document filed with any regulatory agency on behalf of AOP. Moreover, the PSLRA requires that the "complaint specify each statement alleged to have been misleading ... [or] all facts on which such belief is formed." 15 U.S.C. § 78u-4(b)(1). Further, "the court shall, on the motion of any defendant, dismiss the complaint if the requirements" of pleading with particularity are not met. *Id.* at § 78u-4(b)(3). Viewing the Amended Complaint in a light most favorable to Plaintiffs, the Court finds that Plaintiffs failed

to adequately plead that Smith is liable pursuant to Section 18(a). Smith's motion to dismiss Plaintiffs' third cause of action in the Amended Complaint is GRANTED.

### (B) Racketeer Influenced and Corrupt Organizations Act Claims

Plaintiffs' fourth cause of action in the Amended Complaint is asserted against Defendants Capuano, Reilly, Jeffrey Skulsky, Paul Skulsky, Cindy Eisele, Werblin, Citrin and Smith and alleges that Defendants violated 18 U.S.C. §§ 1962(c) and (d) ("RICO"). Defendants Citrin, Werblin, Reilly and Smith move to dismiss the fourth cause of action and argue (1) the alleged predicate acts are all actionable under a claim for securities fraud and, therefore, under the PSLRA, they may not serve as the basis for a RICO claim; (2) the Defendants did not participate in the operation or management of the alleged enterprise; (3) the Amended Complaint fails to allege adequately the requisite RICO "pattern" or "enterprise"; and (4) the Plaintiffs fail to allege a RICO conspiracy claim.

 To sufficiently state a RICO claim, Plaintiffs must plead "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In addition, Plaintiffs must plead injury to business or property as a result of the RICO violation. *See id.* The statute [11] was amended by the PSLRA [12]

---

misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. 15 U.S.C. § 78r(a) (1994).

**11.** Section 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) provides that "It shall be unlawful for any person to

which "removed securities fraud as a predicate offense in civil suits." *Mezzonen v. Wright*, 97 CV 9380, 1999 WL 1037866, * 3 (S.D.N.Y. Nov. 16, 1999) (citing Pub. L. No. 104-676, 109 Stat. 737 (1995)). The amendment "was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim." *Id.* To adequately plead a "pattern of racketeering activity under § 1962(c), a plaintiff must allege that a defendant committed two or more predicate acts of racketeering activity." *Mezzonen*, 1999 WL 1037866 at * 3 (internal quotation marks omitted).

Defendants first argue that Plaintiffs have alleged no conduct other than that alleged in connection with the stock transaction that satisfies the predicate act requirement and, therefore, the Amended Complaint does not state a claim pursuant to RICO. *Citrin Memorandum of Law in Support of its Motion to Dismiss*, pg. 16. Plaintiffs argue that "the predicate acts [asserted] for the RICO claims [wire fraud and mail fraud] occurred prior to the consummation of the Stock Agreement" and, therefore, they should be considered "separate from the securities claims since at the time predicate acts occurred, it was uncertain whether there would be an actionable securities claim." *Plaintiffs' Memorandum of Law in Opposition to the Defendants' Motions to Dismiss*, pg. 17.

▮ Plaintiffs pleaded that the predicate acts relate to wire fraud, mail fraud

and securities fraud. *See Am.Comp.* at ¶ 152. Plaintiffs further allege that Defendants committed wire and mail fraud in their conspiracy to "intentionally misrepresent to Plaintiffs material facts ... and omitted to disclose material facts ... about the financial condition of AOP to artificially inflate the shares of AOP common stock and entice Plaintiffs to enter into a stock in exchange for stock purchase." *Id.* at ¶ 150. Plaintiffs concede that the alleged mail fraud and wire fraud occurred prior to the consummation of the SPA, however such concession is illogical. Had the alleged mail fraud and wire fraud occurred after the execution of the SPA, Plaintiffs would have been unable to assert a claim of securities fraud based upon those incidences because Plaintiffs would have been unable to rely on those assertions in their decision to buy or sell securities. Because the alleged mail and wire fraud occurred prior to the execution of the SPA, Plaintiffs were able to rely upon such statements, and in fact allege in the Amended Complaint in connection with their causes of action pursuant to Section 10b that had they known "of the material adverse information not disclosed by defendants, ... they would not have purchased AOP's securities at artificially inflated prices," or more simply that they did rely on Defendants statements. *Am. Comp.* at ¶ 131; *see also id.* at ¶ 138. Such reliance paves the way for Plaintiffs' securities fraud claims, but disallows, pursuant to the PSLRA, Plaintiffs' RICO claim [13].

conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." *Id.* at § 1962(d).

**12.**

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor ... except that no person may rely upon any conduct that would have been actionable as fraud in the

purchase or sale of securities to establish a violation of section 1962.
18 U.S.C. § 1964(c) (1998).

**13.** The only statements alleged to have been transmitted via mail or wire were those made in the proposed purchase agreement, employment contract and consulting agreement. The purchase agreement contained representations that Plaintiffs allege were false, and allegedly constitute mail and wire fraud which

Plaintiffs' argument that at the time of the alleged wire and mail fraud it was unclear whether there could be a securities claim so the alleged acts of wire and mail fraud should constitute predicate acts pursuant to RICO fails. Plaintiffs' knowledge of the fraud at the time they were defrauded is nonsensical. If Plaintiffs knew at the time that the alleged predicate acts occurred that they were being defrauded or that they had a securities fraud claim they would surely not have entered into the transaction. To that end, securities fraud is always based upon acts that, at the time they were carried out, were not known to the plaintiff to be fraudulent.

As the Court finds that Plaintiffs have failed to plead predicate acts giving rise to a pattern of racketeering activity, further analysis of Plaintiffs' RICO claim is unnecessary. Plaintiffs have failed to adequately assert a claim pursuant to either 18 U.S.C. § 1962(c) or (d). Accordingly, Defendants' motions to dismiss Plaintiffs' RICO claim are GRANTED.

### (C) Common Law Fraud

Plaintiffs' first cause of action asserted against Defendants is for common law fraud. Defendants argue that the common law fraud action should be dismissed for the same reasons that they argue the securities fraud claims should be dismissed. Defendants argue that Plaintiffs (1) fail to allege a material misrepresentation and attribute such to each defendant, (2) fail to adequately plead scienter, (3) fail to allege reasonable reliance upon their alleged statements and (4) cannot show loss causation. Plaintiffs argue that because the ele-

ments of their Section 10b claim and the common law fraud claim are "essentially the same," the common law fraud claim must survive.

■■■■■ The elements of common law fraud under New York law are "essentially the same" as those required to state a claim under Sections 10(b) and 10b-5. *Nat-West Fin.*, 122 F.Supp.2d at 425-26. To sustain a claim based upon common law fraud in New York, Plaintiffs must plead that Defendants made "a representation of fact, which [was] untrue and either known by defendant to be untrue or recklessly made, which [was] offered to deceive and to induce the other party to act upon it, and which cause[d] injury." *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969); *see also Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir.1992). The claim also requires a showing of proximate causation, such that the injury "is the natural and probable consequence of the defrauder's misrepresentation or ... the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud." *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir.1986). The Court previously denied Defendants' motions to dismiss Plaintiffs' claims for primary actor liability pursuant to Section 10b, finding that Plaintiffs sufficiently pleaded the requisite elements of a cause of action for securities fraud based upon Section 10b. The Court finds that Plaintiffs have adequately pleaded the elements for their common law fraud cause of action.

---

may be true, however, the very essence of a securities fraud action is that fraudulent representations were made *in connection with* the sale of securities upon which a plaintiff relied. The purchase agreement, employment contract and consulting agreement were drafted and distributed to the parties in direct

contemplation of the stock sale and, if fraudulent, the remedy lies in the context of securities fraud action. Stock certificates were mailed to Plaintiffs subsequent to the execution of the SPA but Plaintiffs allege no fraud in connection with the transmission of the certificates.

Plaintiffs allege that (1) "Defendants knew that their representations about the financial condition of AOP ... were false at the time they were made," (2) "Defendants intended that Plaintiffs rel[y] upon the aforesaid false and fraudulent representations," (3) "Plaintiffs did in fact rely upon those representations ... [and] Plaintiffs agreed, on or about March 10, 2000 to sell Cyber Media," (4) "AOP's net worth was considerably less than reported ... at the time of purchase" and (5) "[a]s a result of the false and fraudulent representations, Plaintiffs are thereby entitled to ... recovery of damages." *Am.Comp.* ¶¶ 116-122. Plaintiffs have also sufficiently pleaded proximate causation through their assertion that they lost "[a]s a result of the false and fraudulent representations." *Id.* Plaintiffs have therefore pleaded all of the elements of common law fraud. A more detailed discussion of how each element pertains to each individual defendant is set forth herein, in the Court's analysis and discussion of Defendants' motions to dismiss Plaintiffs' Section 10b claims. For the reasons set forth above, Defendants' motions to dismiss Plaintiffs' claim sounding in common law fraud are DENIED.

### (D) Section 349 of the New York General Business Law

Plaintiffs' fifth cause of action arises under Section 349 *et seq.* of the New York General Business Law. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the] state." *N.Y.Gen.Bus.L.* § 349(a), (McKinney 2000). Plaintiffs allege that Defendants violated Section 349 because Defendants "knowingly deceived Plaintiffs with the intent to defraud." *Am.Comp.* ¶ 158. Defendants argue that Section 349 was not intended to apply to transactions of the type and magnitude of the stock transfer at issue, but rather the statute

was meant to protect actual consumers. *Citrin Memorandum of Law in Support of its Motion to Dismiss,* pg. 22. Plaintiffs argue in their opposition to Defendants' motions to dismiss that Defendants' misstatements were meant to deceive the public at large. *Plaintiffs' Opposition to Citrin's Motion to Dismiss,* pg. 23.

For Plaintiffs' Section 349 claim to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs must have pleaded that "the act or practice was misleading in a material respect, and (2) that the plaintiff was injured." *McDonald v. North Shore Yacht Sales, Inc.,* 134 Misc.2d 910, 914, 513 N.Y.S.2d 590 (N.Y.Sup.Ct.1987). However, Section 349 was enacted as a remedy for consumer fraud and " '[t]he typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.' " *Morris v. Gilbert,* 649 F.Supp. 1491, 1496 (E.D.N.Y. 1986) (quoting *Genesco Entm't, a Division of Lymutt Indus. v. Koch,* 593 F.Supp. 743, 751-52 (S.D.N.Y.1984)). The *Morris* court found that because the action was based upon a fraudulent sale of securities, plaintiffs failed to state a claim for relief pursuant to Section 349. *Id.* Section 349 has not been held by courts in the Second Circuit to apply to securities fraud claims. *See In re Motel 6 Sec. Litig. Redtail Leasing, Inc. v. Thrasher,* 93 CV 2183, 1995 WL 431326, *6 (S.D.N.Y. July 20, 1995) (citing *Nat'l Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 689 (S.D.N.Y.1991) *aff'd Yaeger v. Nat'l Westminster,* 962 F.2d 1 (2d Cir. 1992)). Plaintiffs' claims are all based upon facts that give rise to a claim for securities fraud. For the foregoing reasons, Defendants' motions to dismiss, Plaintiffs' claim pursuant to New York General Business Law Section 349 are GRANTED.

### (E) Breach of Good Faith and Fair Dealing

Plaintiffs' sixth cause of action alleges that Defendants breached their covenant of good faith and fair dealing. *See Am.Comp.* ¶¶ 160-62. Defendants argue that there existed no contractual relationship between any of the defendants and Plaintiffs. New York common law supports the proposition that no covenant of good faith and fair dealing arises in the absence of a contract. *American-European Art Assocs., Inc. v. Trend Galleries, Inc.,* 227 A.D.2d 170, 171, 641 N.Y.S.2d 835 (1st Dep't 1996). Where, as here, Plaintiffs and Defendants have not entered into any contract, nor is there any allegation of any type of contractual relationship between the parties, Plaintiffs cannot sustain a cause of action based on a breach of the covenant of good faith and fair dealing. Plaintiffs' argument that Citrin and Werblin "assumed the position of agent of AOP" is not pleaded in the Amended Complaint and lacks merit. *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss,* pg. 24. Defendants' motions to dismiss Plaintiffs' cause of action sounding in a breach of the covenant of good faith and fair dealing are GRANTED.

### (F) Breach of Contract Claims Against Reilly.

Plaintiffs' seventh, eighth and ninth causes of action allege that a group of defendants, including defendant Reilly, breached a contract with Plaintiffs. The seventh cause of action alleges a breach of the terms of the SPA, the eighth cause of action alleges a breach of an agreement to pay for advertising services that Plaintiffs secured for AOP and the ninth cause of action alleges that one of plaintiff David Marcus' paycheck's bounced and that De-

fendants therefore breached the contract to pay Mr. Marcus.

Defendant Reilly argues that Plaintiffs' pleadings are deficient because "Plaintiffs have not alleged that Reilly was a party to any contract with Plaintiffs." *Reilly Memorandum of Law in Support of his Motion to Dismiss,* pg. 3. Reilly further argues that "[c]orporate officers may not be held personally liable on contracts of the corporation if they did not purport to bind themselves individually." *Id.* (citing *Lichtman v. Mount Judah Cemetery,* 269 A.D.2d 319, 705 N.Y.S.2d 23, 25 (1st Dep't 2000); *Westminster Constr. Co., Inc. v. Sherman,* 160 A.D.2d 867, 554 N.Y.S.2d 300, 301 (2d Dep't 1990)). Plaintiffs have not supplied the Court with any support in their opposition for the breach of contract claims, so the Court will review the cause of action on its face as set forth in the Amended Complaint.

Reilly's argument that Plaintiffs should not be permitted to attempt to hold him personally liable on contracts entered into with AOP has merit. It is well settled that corporate officers cannot be held personally liable on a contract claim for the acts of a corporation if the contract does not explicitly bind the individual. *See PNC Capital Recovery v. Mechanical Parking Systems, Inc.,* 283 A.D.2d 268, 726 N.Y.S.2d 394 (1st Dep't 2001). Plaintiffs do not allege that Reilly was individually liable on any of the contracts that were allegedly breached. Accordingly, Reilly's motion to dismiss the seventh, eighth and ninth causes of action is GRANTED.

### (G) Claim for Unjust Enrichment

Finally, Plaintiffs allege in the tenth cause of action that Defendants have been, and will continue to be, unjustly enriched as a result of Defendants' wrongful actions. *See Am.Comp.* ¶¶ 177-79. Defen-

dants argue that Plaintiffs fail to allege "any enrichment, or benefit of any kind" on the part of Defendants in connection with the transaction. *Citrin Memorandum of Law in Support of its Motion to Dismiss,* pg. 24.

 "To state a cause of action for unjust enrichment, a plaintiff must allege that it conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor." *Nakamura v. Fujii,* 253 A.D.2d 387, 390, 677 N.Y.S.2d 113, 116 (1st Dep't 1998). Plaintiffs do not allege that Citrin, Werblin, Reilly or Smith benefitted in any way as a result of Plaintiffs' actions. Accordingly, Defendants' motion to dismiss Plaintiffs' cause of action alleging unjust enrichment is GRANTED.

### (H) Plaintiffs' request for Leave to Amend

 In Plaintiffs' opposition to Defendants' motions to dismiss, Plaintiffs seek leave to amend their complaint if any of the claims are dismissed herein. Fed. R. Civ. P. 15(a) states that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Leave to amend should not be granted if undue delay in amending the Complaint would be prejudicial to the Defendants." *Yurman Design Inc. v. Chaindom Enter., Inc.,* 99 CV 9307, 2001 WL 725291, *3 (S.D.N.Y. June 27, 2001) (citing *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 855 (2d Cir.1981)) (noting that prejudice to the opposing party is perhaps the most important reason for denying leave to amend). Factors to be considered in determining whether leave to amend would be prejudicial are whether such leave would " '(i) require the opponent to expend significant additional re-

sources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.' " *Id.* (quoting *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993)). Plaintiffs have amended their complaint twice to date. Defendants have drafted motions to dismiss based upon the original complaint and the second amended complaint. To permit another amendment to the complaint would be unduly prejudicial to the Defendants because of the added expense in again moving to dismiss and the delay that such leave would cause. Plaintiffs' request for leave to amend the complaint in accordance with the framework the Court set forth herein is DENIED.

## IV CONCLUSION

For the aforementioned reasons, Defendants' motions to dismiss are GRANTED, in part, and DENIED in part, as follows:

A. Defendants' motion to dismiss Plaintiffs' first cause of action, common law fraud, is DENIED;

B. Defendants' motion to dismiss Plaintiffs' second cause of action pursuant to Section 10b is DENIED;

C. Plaintiffs' second cause of action pursuant to Section 20(a) of the Exchange Act, "control person" liability, was sufficiently pleaded to withstand Citrin, Werblin and Reilly's motions to dismiss, which are hereby DENIED, however, Smith's motion to dismiss with respect to the portion of Plaintiffs' second cause of action that addresses Section 20(a) liability is GRANTED;

D. Smith's motion to dismiss Plaintiffs' third cause of action, Section 18(a) liability, is GRANTED;

E. Defendants' motions to dismiss Plaintiffs' fourth cause of action, alleging RICO violations, are GRANTED;

F. Defendants' motions to dismiss Plaintiffs' fifth cause of action, alleging violations of New York General Business Law Section 349, are GRANTED;

G. Defendants' motions to dismiss Plaintiffs' sixth cause of action, alleging a breach of the covenant of good faith and fair dealing, are GRANTED;

H. Reilly's motion to dismiss Plaintiffs' seventh, eighth and ninth causes of action alleging breach of contract is GRANTED; and

I. Defendants' motions to dismiss Plaintiffs' tenth cause of action alleging unjust enrichment are GRANTED.

All remaining claims by Defendants are DENIED.

SO ORDERED.