■ PNC CAPITAL RECOVERY, as Successor in Interest to MIDLANTIC BANK, N. A., Appellant, v MECHANICAL PARKING SYSTEMS, INC., Defendant, and SHLOMO KADOSH, Respondent. [726 NYS2d 394] —Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered June 5, 2000, which, to the extent appealed from as limited by the brief, granted the individual defendant summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, plaintiff's motion for summary judgment granted, and the matter remanded for further proceedings.

Plaintiff, as successor in interest to Midlantic Bank, N. A., commenced this action against defendants to recover $40,942.53, pursuant to a Promissory Note and a Commercial Security Agreement, executed between plaintiff and defendant Mechanical Parking Systems, Inc. (Mechanical), the corporate owner of a parking garage. Shlomo Kadosh was the president of Mechanical. He signed the Promissory Note and Commercial Security Agreement on behalf of Mechanical, by placing his signature on a line, below which was preprinted, "Shlomo Kadosh, President."

Plaintiff's individual claim against Mr. Kadosh is based upon a third document, entitled "Commercial Guaranty" (the Guaranty) which provided, in pertinent part: "CONTINUING UNLIMITED GUARANTY. For good and valuable consideration, SHLOMO KADOSH ('Guarantor') absolutely and unconditionally guarantees and promises to pay Midlantic Bank, N.A. ('Lender') or its order, in legal tender of the United States of America, the indebtedness (as that term is defined below) of MECHANICAL PARKING SYSTEMS, INC. ('Borrower') to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of the Guarantor are continuing."

The heading of the Guaranty agreement listed Mr. Kadosh

as the "Guarantor," with his home address in New York. The Guaranty also specifically provided that any notices required to be given under it were to be sent to Mr. Kadosh at his home address. The heading of the Guaranty separately listed Mechanical as the "Borrower," at the corporate address in New Jersey. At the end of the document, Mr. Kadosh signed as "Guarantor" on a line, below which was preprinted, "Shlomo Kadosh." Although the word president was not pre-printed under this signature line, Mr. Kadosh added the word, "president" next to his signature.

The following provision was also included in the guaranty: "LIMITATION OF PERSONAL LIABILITY. Notwithstanding anything contained herein to the contrary, it is agreed that, unless an exception to the requirements of Regulation B of the Board of Governors of the Federal Reserve System applies in connection with the extension of the indebtedness and the execution of this Guaranty, the Guarantor shall not be personally liable under this Guaranty, provided that this provision will not limit the Lender's right to obtain such judgment, order or other relief against the Guarantor as may be necessary for the Lender to exercise all of its rights and remedies with respect to assets held jointly as of the date of the Guarantor's most recent financial statement delivered prior to the date hereof and thereafter acquired."

Plaintiff brought this action pursuant to CPLR 3213, against Mechanical, for breach of the Promissory Note and the Commercial Security Agreement, and against Mr. Kadosh individually, based upon the terms of the Guaranty. When neither defendant appeared on the calendared date, the IAS court awarded plaintiff judgment on default against both defendants. Both Mechanical and Mr. Kadosh then moved to vacate the default judgments. As relevant here, Mr. Kadosh asserted that he should not be held personally liable for the corporate debt because he never intended to sign the Guaranty in an individual capacity. In support, he asserted that he expressed his intent to be held liable only in a corporate capacity by writing his corporate title "president" next to his signature on the Guaranty. Mr. Kadosh also argued that he was misled by the title of the Guaranty, which was termed "Commercial," not "Personal."

On the return date for defendants' motions, the court requested additional information regarding the "Limitation of Personal Liability Provision" in the Guaranty. Although he had not raised the issue earlier, Mr. Kadosh asserted that this provision undermined plaintiff's right to judgment against him

individually. The court granted Mr. Kadosh's motion to vacate, and amended its earlier decision, awarding Mr. Kadosh summary judgment dismissing the complaint against him. Stating that "[a]ny ambiguity or doubt raised by the guaranty form presented to defendant by plaintiff must be construed against plaintiff," the court found that the legend, "Commercial Guaranty," the signature of "Shlomo Kadosh, president," and the "Limitation of Personal Liability" clause "are all factors which lead to the conclusion that defendant Kadosh is not personally liable on the guaranty." The court reasoned that there was "no proof that an exception to the requirements of Regulation B applies here," and found that plaintiff's argument that Regulation B does not restrict the use of a guarantor for a commercial loan was "not to the point." This was error.

While officers or agents of a corporation are not liable on its contracts if they do not purport to bind themselves individually (*Savoy Record Co. v Cardinal Export Corp.*, 15 NY2d 1, 4; *Salzman Sign Co. v Beck*, 10 NY2d 63), the terms of the instant Guaranty constitute a deliberately stated, unambiguous and separate expression personally obligating Mr. Kadosh for Mechanical's debt (*Kass v Kass*, 91 NY2d 554, 566 ["(w)hether an agreement is ambiguous is a question of law for the courts"]). Mr. Kadosh signed the Guaranty, separate and apart from the Promissory Note and the Commercial Security Agreement, indicating that he was absolutely and unconditionally guaranteeing and promising to pay the lender bank, plaintiff's predecessor, for consideration received. Unlike the Promissory Note and the Commercial Security Agreement, Mr. Kadosh's title as president was not pre-printed below the signature line on the Guaranty (*see, Salzman, supra* at 67 ["where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual"]). Mr. Kadosh's name and his home address were recited in the printed language under the heading "Guarantor." Mechanical Parking was listed separately as the Borrower, and its corporate address was provided thereafter. The two terms (Guarantor and Borrower) were specifically differentiated throughout the Guaranty. It would be contrary to the express language of the contract to conclude that Mr. Kadosh signed it in his representative capacity as president of Mechanical.

Further, an interpretation that Kadosh signed the Guaranty solely in his capacity as president of the corporation would compel the illogical conclusion that the purpose of the Guaranty was to provide that in case of Mechanical's default,

the company would guaranty its own indebtedness, rendering the entire Guaranty meaningless (*Two Guys from Harrison-N. Y. v S.F.R. Realty Assocs.*, 63 NY2d 396, 403 ["(i)n construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless"]; *Bank of New York v Murphy*, 230 AD2d 607, *lv dismissed* 89 NY2d 1030 [court construes a contract to give effect to all of its terms, avoiding interpretation which would render a critical portion of the document meaningless]; *Yoi-Lee Realty Corp. v 177th St. Realty Assocs.*, 208 AD2d 185, 190 [same]).

The defendant's next argument, that writing the word "president" next to his name on the signature line of the Guaranty showed that he did not intent to be personally bound, is without merit. Equally meritless is the argument that the Guaranty was ambiguous because it was titled a "Commercial Guaranty," rather than a "Personal Guaranty." This Court has consistently held that where there is evidence that a person signed a guaranty as an individual and not on behalf of a corporation, the inclusion of "president" after his signature is merely descriptive (*Chemical Bank v Masters*, 176 AD2d 591). In *Chemical*, as here, the individual guarantor's writing the word "V. Chairman" next to his signature did "not evidence an intention to sign in a purely corporate capacity which would, in any event, be inconsistent with the nature of the guaranty" (*id.*; *see also, Chemical Bank v Kaufman*, 142 AD2d 526 [same]). Further, the fact that the document was termed a Commercial Guaranty does not render it ambiguous, because either an individual or a corporation may engage in a commercial transaction.

Finally, the paragraph in the Guaranty referring to Regulation B, entitled "Limitation of Personal Liability," does not preclude a finding that Mr. Kadosh was liable for Mechanical's debt. When read in the context of the statute and Regulation to which it refers, it becomes clear that it does not preclude Mr. Kadosh's individual liability. Federal Reserve Board Regulation B (12 CFR part 202), was promulgated under the Equal Credit Opportunity Act (15 USC § 1691; *see, First Fid. Bank v Best Petroleum*, 757 F Supp 293, 295). The introduction to Regulation B provides: "The purpose of this regulation is to promote the availability of credit to all creditworthy applicants without regard to race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act." (12 CFR 202.1 [b].)

Further, 12 CFR 202.7 (d) (5) provides that "[i]f, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the extension of the credit requested, a creditor may request a cosigner, guarantor, or the like." The purpose and object of both the statute and Regulation B is to prohibit racial and other specified forms of discrimination (*see, First Fid., supra* at 295). Regulation B does not restrict the use of a guaranty for a commercial loan, and it does not preclude any person from guaranteeing the debt of his own closely held corporation (*see*, Federal Reserve System Rules and Regulations, Official Staff Interpretation, Comment 7 [d] [6] 61 Fed Reg 50948 ["a creditor may require that partners, officers or directors personally guarantee an extension of credit to a business, even if the business is creditworthy"]). Its inclusion here does not relieve Mr. Kadosh from his personal responsibility for Mechanical's debt.

Because Mr. Kadosh was under the obligation to exercise ordinary diligence to ascertain the terms of the document he signed (*Marine Midland Bank v Idar Gem Distribs.*, 133 AD2d 525), a personal Guaranty of his company's debt, the order granting his motion to vacate the default judgment against him, and, upon vacatur, granting Mr. Kadosh summary judgment is reversed, and plaintiff's motion for summary judgment against him is granted. Concur—Rosenberger, J. P., Tom, Mazzarelli, Ellerin and Wallach, JJ.