**WING-IT DELIVERY SERVICES, INC., and KURT VALMOND,
Appellants**

**v.**

**VIRGIN ISLANDS COMMUNITY BANK, Appellee**

D.C. Civ. App. No. 2000/176

District Court of the Virgin Islands

Division of St. Croix

June 24, 2005

RONALD E. RUSSELL, ESQ., St. Croix. U.S.V.I., *Attorney for Appellants.*

KEVIN A. RAMES, ESQ., St. Croix, U.S.V.I., *Attorney for Appellee.*

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and HODGE, *Judge of the Superior Court, Sitting by Designation.*

## MEMORANDUM OPINION

(June 24, 2005)

Appellant[1] Kurt Valmond ["Valmond"] challenges the Superior Court's grant of summary judgment in favor of Virgin Islands Community Bank ["VICB"], the plaintiff in the underlying action. That disposition resulted in a judgment for a debt totaling $30,752.56, plus interests and costs, against the appellants and in favor of VICB.

For the reasons which follow, the trial court's grant of summary judgment will be affirmed.

## I. STATEMENT OF FACTS & PROCEDURAL POSTURE

This case originated as an action for debt against both Valmond and Wing-It Delivery Services, Inc. ["Wing-It"]. It is undisputed that, in December 1995, Wing-It executed a promissory note for $50,000 in favor of VICB. [Br. of Appellant at A19-20]. As the president and sole shareholder of Wing-It, Valmond signed that document below Wing-It's name. [Br. of Appellant at A36]. Valmond also signed a "Guaranty" agreement, which designated him as the "Debtor." [Br. of Appellant at A18-19]. The terms of that agreement provided:

> "In case the Debtor shall fail to pay all or any part of the liability when due, whether by acceleration or otherwise, according to the terms of said note, the Undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the Undersigned.

[*Id.*].

On October 24, 1997, Valmond sold Wing-It to Charles Johnson. ["Johnson"]. Valmond and Johnson executed a bill of sale which included a promise by Johnson to assume the corporate debts as part of the sales transaction. [Br. of Appellant at A39]. Valmond notified VICB, through its loan representative, John Matheson ("Matheson"), of the terms of the sales agreement. Following that sale, Valmond ceased

---

[1] Wing-It Delivery Services, Inc. was also named as a defendant in this action for debt and is listed as an appellant herein. However, the arguments here relate only to Valmond; Wing-It, which is no longer owned by Valmond, has not joined in this appeal or filed a brief in this matter.

making payments under the promissory note. However, Johnson made no payments as agreed, and the bank filed an action for debt, naming both Wing-It and Valmond.

VICB sought and obtained summary judgment on the debt action in the trial court. Valmond argued below that he may no longer be held liable for the debt to VICB which, he claims, at the time of the default was the sole responsibility of Johnson under the parties' sales agreement. Valmond further argued the bank should be estopped from maintaining an action for debt against him, where he notified the bank of the terms of that sale and the bank either approved or ratified that sale. [Br. of Appellant at 8, 11-12]. However, Matheson submitted an affidavit to the trial court denying assertions he endorsed the assumption agreement between Valmond and Johnson or agreed to release Valmond from that debt. Rather, Matheson asserted he was informed of the sale and of Johnson's intent to assume responsibility for the loan and merely "advised Valmond that in order to effectuate a release of his personal guaranty to the Bank, Mr. Johnson would have to be qualified as a guarantor of the loan." [Br. of Appellant at A20].

By order entered September 21, 2000, the trial court granted VICB's motion for summary judgment. [Br. of Appellant at A3-5]. The court found the following facts to be undisputed: 1) That Valmond entered into an agreement with a third party to sell his company; 2) That as a condition of that sale, Johnson agreed to assume Valmond's loan obligation; 3) that VICB approved of the sale between Valmond and Johnson; 4) that VICB did not release Valmond from the loan obligation and that Valmond was, therefore, not absolved from the loan obligation. [See Br. of Appellant at A3-4]. This appeal followed.[2]

---

[2] This matter was previously before the appellate panel convened on December 22, 2003. However, the Court declined to consider the merits at that time until its jurisdiction could be positively determined. Because of an apparent inconsistency in the record on that issue, we remanded to the trial court for further fact finding. The presiding judge of that court having entered findings of fact explaining the discrepancy in the filing dates, which established that the notice of appeal was timely filed, we may now proceed on the merits.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

This Court may exercise appellate jurisdiction over this timely appeal. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating this Court's appellate jurisdiction).

The trial court's grant of summary judgment is afforded plenary review. *See Government of V.I. v. Innovative Communications Corp.*, 215 F. Supp. 2d 603 (D.V.I. App. Div. 2002). We must determine whether, viewing the evidence and reasonable inferences therefrom in the light most favorable to the non-movant, there appears no genuine issues of material fact in dispute which would permit a reasonable jury to find for the non-moving party. *See* FED. R. CIV. P. 56 (c); *Guardian Ins. Co. v. Bain Hogg Intern. Ltd.*, 52 F. Supp. 2d 536, 540 (D.V.I. App. Div. 1999). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A fact is material if its determination would affect the outcome of the case. *See Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

Where the trial court's determination was based on its application of legal precepts or interpretation of a statute, our review is also plenary. *See HOVIC v. Richardson*, 894 F. Supp. 211, 32 V.I. 336 (D.V.I. App. Div. 1995). However, we review the trial court's factual determinations for clear error. *See Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 233 F.3d 188, 193 (3d Cir. 2000).

### B. Was Summary Judgment Warranted?

Valmond argues the challenged debt necessarily passed to Johnson as part of the sale of the corporation, given Johnson's express agreement to assume the liabilities of the transferring corporation which, Valmond contends, thereby extinguished his liability on that debt. [Br. of Appellant at 9-11]. That argument suffers from several defects, in that it incorrectly assumes: 1) the debt was solely a corporate, rather than a personal, debt; 2) the debt could be unilaterally modified or assigned by third-party agreement; 3) an agreement with a third-party could serve as a release of the debt.

Indeed, it appears undisputed that, under the plain language of the bill of sale, Wing-It's purchaser agreed to assume the liabilities of Wing-it.[3] It also appears VICB continues to recognize the liability of that corporation, as it, too, was named as a defendant in the underlying debt action. However, any liability borne by the new corporation in this instance under the promissory note does not end the inquiry, for it informs only the limited question whether the new corporation is bound by the debt of the original corporation under the promissory note. Were this Court asked to decide who, as among two corporations, bore responsibility for the corporate debt under the note, we might find Valmond's arguments premised on successor liability more persuasive. However, we are not faced with that issue here. Indeed, the guaranty to which Valmond agreed casts a different light on this case. Given that guaranty, executed by Valmond in favor of VICB, the relevant inquiry is whether Valmond was discharged from that obligation.[4]

---

[3] *See Polius v. Clark Equipment Co.*, 802 F.2d 75, 77-78 (3d Cir. 1986) (noting that debts of transferring corporation do not automatically pass to successor corporation and are deemed the debts of the new corporation only where: "(1) it assumes liability; (2) the transaction amounts to a consolidation or merger; (3) the transaction is fraudulent and intended to provide an escape from liability; or (4) the purchasing corporation is a mere continuation of the selling company.") (citing 15 W. FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, § 7122 (Perm. Ed. 1983)).

[4] We note at the outset that Valmond has not challenged his signature on the guaranty agreement nor attempted to raise a genuine issue of material fact in dispute regarding his intent to be personally bound. *See Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520-21 (3d Cir. 1994), *aff'd*, 513 U.S. 1040 (1994); 3A FLETCHER CYCLOPEDIA CORPORATIONS §§ 1117-1119, 1133 (2002) (noting that, as an entity separate and apart from its individual officers, a corporation's debts are its own, and its officers generally may not be made to answer for those debts unless they agree to be personally bound). Therefore, we need not reach that issue and will resolve here only whether there is a genuine fact issue regarding his release from that debt.

We note, however, that the plain language of the guaranty agreement presents no ambiguity regarding whether Valmond incurred personal liability on the debt. *See* FLETCHER §§ 1117-1119, 1133 (whether officer agreed to incur personal liability is to be determined based on the intent of the parties, as reflected in the language of the agreement, if unambiguous; *if* the parties' intent is reflected in an unambiguous agreement, then the question becomes one of law to be resolved by the court, and genuine fact issue presented only where there is ambiguity in the agreement); *Ricker v. B-W Acceptance Corporation*, 349 F.2d 892 (10th Cir. 1965) (holding no genuine material issue of fact raised regarding company president's intent to be personally bound where the written guaranty agreement was not ambiguous on that issue); *compare, PNC Capital Recovery v. Mechanical Parking Systems, Inc.*, 283 A.D.2d 268, 726 N.Y.S.2d 394, 396-

■ As with ordinary contracts, the terms of the guaranty agreement are controlling, and the manner in which the guarantor's liability may be terminated must be in accordance with its plain and unambiguous terms or by subsequent agreement of the parties. *See* 3A FLETCHER CYCLOPEDIA CORPORATIONS § 1119; *compare, Springs Industries, Inc. v. Kris Knit, Inc.*, 880 F.2d 1129, 1131-32 (9th Cir. 1989) (rejecting argument that guaranty terminated where manner was inapposite to the plain terms of the contract).

■ Where, as here, the guarantor attempts to prove a subsequent agreement to discharge the obligation on condition of a substitution of debtors, it must be shown that the creditor assented to both the substitution and the discharge of the original obligor.[5] *See* RESTATEMENT (SECOND) OF CONTRACTS § 280 cmt. d (discussing novation); *compare* § 318(3) and cmt. d.; § 284 (defining release).[6] Absent the creditor's manifestation of assent to discharge the duty, the original debtor remains liable on the agreement, notwithstanding the acceptance of performance from a substituted obligor or the original debtor's delegation of the duty to a third party. *See* RESTATEMENT §§ 280, 318(3) and cmt. d. Several factors prevent us from finding a genuine fact issue regarding whether Valmond's liability was discharged, precluding summary judgment.

The plain and unambiguous terms of the guaranty agreement did not limit Valmond's liability to the life of the existing corporation or his

---

97 (N.Y.A.D. 2001) (noting that, where corporate president signed both corporate guaranty and promissory note, it is illogical to determine that the corporation guaranteed its own note and doing so would essentially leave guaranty meaningless).

[5] In determining whether Valmond's liability was discharged in a manner not specifically stated under the Uniform Commercial Code, *see* 11A V.I.C. §§ 3-602-605, we apply contract law. *See* 11A V.I.C. § 3-601(a) (noting that an obligation on an instrument may be discharged "as stated in this Article or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract"); *see also* § 3-117 (discussing discharge or modification of obligation by subsequent agreement).

[6] Where our statutes are silent on an issue, we are instructed to draw from the restatements, as follows:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

1 V.I.C. § 4.

continued position as an officer in that corporation. There are further no contract terms permitting revocation or termination of the guaranty upon notice to the creditor of changes in the company or in Valmond's association with the corporation. Rather, the guaranty made clear it was to serve as security for a five-year obligation under the promissory note, and did not purport to tie Valmond's obligation to his status in the corporation or the corporation's ownership. *See e.g.,* FLETCHER § 1119 (Unless specified in the contract, a corporate officer's guaranty obligation is not automatically terminated upon notice to the creditor that the debtor's relationship with the corporation has ended; mere notice to the creditor that the officer has resigned or otherwise terminated the relationship or connection with the corporation has been held insufficient to constitute an effective notice of revocation or termination of the officer's continuing individual liability under a contract of guaranty, "since the guaranty is not conditioned upon his or her status as an officer or shareholder of the corporation.").

Moreover, Valmond adduced no evidence of a writing discharging the debt or otherwise materially modifying the written contract, as required where, as here, the underlying contract comes within the statute of frauds.[7] *See* RESTATEMENT § 284; § 149 (specifying writing requirement for material modifications to contracts under statute of frauds); *Swain v. Seamens,* 76 U.S. 254, 272, 19 L. Ed. 554 (1869) (noting that contrary rule permitting oral modifications would nullify the Statute); WILLISTON ON CONTRACTS § 29:44 (same). We additionally note the absence of any evidence on the record from which a reasonable jury could conclude that VICB otherwise manifested an intent, under the circumstances, to discharge Valmond's liability under the guaranty.

Significantly, Valmond has asserted no facts pointing to an agreement or expression of intent by VICB to discharge the debt under the guaranty. Rather, he asserted only that the sale and Johnson's agreement to assume Wing-It's liabilities were "discussed" with the bank and the bank was made aware of and approved the terms of the bill of sale. [See Br. Of

---

[7] A guaranty agreement is one in which the signor agrees to answer for the debts of another in the event of default and which makes the guarantor equally liable as a primary debtor if default occurs. *See* FLETCHER §§ 1117, 1119 (defining guaranty agreements). Such agreements are, therefore, within the Virgin Islands Statute of Frauds and are enforceable only if in writing. *See* 28 V.I.C. §§ 241-244 (noting that promises to answer for the debt or default of another comes within the Statute).

Appellant at 8, 11-12; *see also* Def. Opp'n to Sum. Judg., Br. of Appellant at A26]. Those facts cannot support a finding that VICB released Valmond from the debt under the guaranty agreement, or manifested its intent to do so, even if they do indicate VICB's willingness to consider Johnson as a substituted debtor on the promissory note.

Finally, Johnson's agreement with Valmond to assume Wing-It's liabilities could not have the effect of discharging Valmond's obligation under the guaranty, because VICB was not a party to that agreement and Valmond could not unilaterally contract with a third party to alter the rights of VICB. *See* RESTATEMENT (SECOND) OF CONTRACTS § 318(3) and cmt. d (while person with contractual duty may delegate its performance to a third party in many instances, this does not relieve him of liability in the event of a breach; modification requires assent by all parties to a contract); *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999) (noting, in discussing the common law, that party to contract cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty); *see also* 11A V.I.C. § 3-117 (noting that obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and the person entitled to enforce the instrument).

In view of the foregoing, Valmond's asserted facts could not serve to extinguish his liability under the guaranty, nor affect VICB's right to proceed against the guarantor in the event of default. Therefore, summary judgment was proper.

## III. CONCLUSION

The record reveals no genuine issue of material fact in dispute regarding whether Valmond was discharged from the obligation under the guaranty agreement, either by operation of the agreement with Johnson or by agreement with VICB. Therefore, this Court will affirm the trial court's order granting summary judgment.