[Cite as *JDH Mgt. Group, L.L.C. v. Pierce*, 2018-Ohio-706.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| JDH MANAGEMENT GROUP, LLC, | : | CASE NO. CA2017-07-100 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N<br>2/26/2018 |
| - vs - | : | |
| | : | |
| GREGORY W. PIERCE, et al., | : | |
| Defendants-Appellees. | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV894158


Robbins, Kelly, Patterson & Tucker, James M. Kelly, Richard O. Hamilton, Jr., and Jarrod M. Mohler, 7 West Seventh Street, Suite 1400, Cincinnati, Ohio 45202, for plaintiff-appellant

Jacobs, Kleinman, Seibel & McNally, L.P.A., Mark J. Byrne, The Cincinnati Club Building, Suite 905, 30 Garfield Place, Cincinnati, Ohio 45202, for defendants-appellees


**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, JDH Management Group, LLC ("JDH"), appeals a decision of the Warren County Court of Common Pleas denying its motion for judgment on the pleadings, or in the alternative, to stay the proceedings and compel arbitration.

{¶ 2} In February 2014, defendants-appellees, Gregory and Debra Pierce, contracted with JDH to build a residence for them in Liberty Township, Ohio ("Construction

Contract"). Pursuant to the Construction Contract, the total cost of construction of the residence was $1,783,415. The Construction Contract incorporated a Customer Information Sheet which set forth the various allowances for specific items included within the contract price. The Customer Information Sheet further provided that the contract price was subject to change based upon the Pierces' actual expenditures in relation to the various allowances stated in the Customer Information Sheet. Upon completion of the work and factoring in actual expenditures and prior payments, the Pierces owed JDH a final payment of $319,150.69, to be paid at closing. Pursuant to the Construction Contract, the Pierces were not permitted to occupy the home until JDH had been paid in full.

{¶ 3} In November 2014, the Pierces advised JDH that they were unable to make the final payment due at closing. In a follow-up email, the Pierces inquired if they could pay the balance upon the sale of their current residence and whether JDH could "work something out." On December 11, 2014, JDH offered to accept monthly payments on a reduced balance of $270,189.55 and sent the Pierces a Repayment Agreement and a mortgage memorializing such offer. On December 13, 2014, the Pierces offered to pay a further reduced balance of $249,189.55 and sent JDH a signed Repayment Agreement for that amount and a signed, un-notarized mortgage for $249,598.55. JDH accepted the Pierces' counteroffer. Consequently, pursuant to the Repayment Agreement, the Pierces were to pay JDH $249,598.55 at 10 percent per annum interest and $1,200 per month for the use of the residence. The entire unpaid balance was payable by February 1, 2015. The Pierces anticipated paying JDH in full with the sale proceeds of their current residence.

{¶ 4} The Pierces made a $1,200 payment for their use of the residence in December 2014. However, they made no further payments and did not pay the balance on or before February 1, 2015, as provided in the Repayment Agreement. The Pierces advised JDH they would pay the remaining balance of $255,289.55 by March 14, 2015, but failed to

do so.

{¶ 5} On January 17, 2017, JDH filed a complaint against the Pierces for breach of the Repayment Agreement. The Pierces answered and alleged six counterclaims: (1) breach of the Construction Contract, (2) negligence, (3) breach of warranty, (4) fraud in the inducement and performance of the Construction Contract, (5) performance of the Construction Contract in violation of R.C. Chapter 4722, and (6) fraud in the inducement of the Repayment Agreement.

{¶ 6} JDH filed a reply to the Pierces' counterclaims and moved for judgment on the pleadings, or in the alternative, to stay the counterclaims pending arbitration. Specifically, JDH argued it was entitled to judgment on the Pierces' counterclaims because the Repayment Agreement superseded the Construction Contract. Alternatively, JDH argued the counterclaims were to be stayed pending mandatory arbitration pursuant to Article 15 of the Construction Contract.

{¶ 7} Article 15 of the Construction Contract provides that "any Claim arising from or relating to this Agreement or the breach thereof is subject to good faith negotiation, and if not resolved within 60 days, is subject to arbitration at the request of either party." Article 15 further provides that "[a]ny Claim arising out of this Agreement shall be commenced with[in] one (1) year from JDH's last date of Work on the Project." JDH's motion stated that its last date of work on the project was October 23, 2014.

{¶ 8} On June 6, 2017, the trial court denied JDH's motion for judgment on the pleadings, rejecting JDH's claim that the Repayment Agreement superseded the Construction Contract because "[t]here [was] nothing in the Repayment Agreement indicating the parties' desire or intent to disregard the Construction Contract." The trial court further denied JDH's motion to stay the counterclaims pending arbitration. The trial court found that although the Repayment Agreement did not have an arbitration clause, the

Repayment Agreement and Construction Contract were "clearly linked," in that "[w]ithout the Construction Contract, there would be no Repayment Agreement to enforce." Consequently, the trial court found that JDH waived its right to arbitration under the Construction Contract when it filed suit to enforce the Repayment Agreement.

{¶ 9} JDH now appeals, raising two assignments of error that will be considered in reverse order.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED IN DENYING JDH'S MOTION FOR JUDGMENT ON THE PLEADINGS.

{¶ 12} JDH argues the trial court erred by denying its motion for judgment on the pleadings because the Repayment Agreement is a valid novation of the Construction Contract and thus, the Repayment Agreement replaced the Construction Contract. JDH further argues the trial court erred in failing to dismiss the Pierces' counterclaims related to the Construction Contract because they were not brought within one year of JDH's last date of work as required under Article 15 of the Construction Contract. Finally, JDH argues the trial court erred in failing to dismiss the counterclaim for fraudulent inducement of the Repayment Agreement because the Repayment Agreement ultimately entered into was the Pierces' counteroffer that JDH accepted, and not JDH's initial offer.

{¶ 13} A trial court's decision on a Civ.R. 12(C) motion for judgment on the pleadings is reviewed by an appellate court de novo. *Golden v. Milford Exempted Village School Bd. of Edn.*, 12th Dist. Clermont No. CA2008-10-097, 2009-Ohio-3418, ¶ 6. Pursuant to Civ.R. 12(C), a judgment on the pleadings is appropriate if the court finds that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. In ruling on the Civ.R. 12(C) motion, the court construes as true all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party.

*Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, ¶ 2. Civ.R. 12(C) motions are specifically for resolving questions of law. *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001). "The determination of a motion for judgment on the pleadings is limited solely to the allegations in the pleadings and any writings attached to the pleadings." *Golden* at ¶ 6.

{¶ 14} A novation occurs "where a previous valid obligation is extinguished by a new valid contract, accomplished by the substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." *Moneywatch Cos. v. Wilbers*, 106 Ohio App.3d 122, 125 (12th Dist.1995). "In order to effect a valid novation, all parties to the original contract must clearly and definitely intend the second agreement to be a novation and intend to completely disregard the original contract obligation." *Id.* A novation can never be presumed. *Id.* Thus, the party asserting a novation defense has the burden of proof. *Huntington Natl. Bank v. D&G Ents., Inc.*, 7th Dist. Mahoning No. 12 MA 15, 2013-Ohio-1117, ¶ 22.

{¶ 15} We find that the Repayment Agreement is not a novation of the Construction Contract. There is no clear and definite evidence that the Pierces intended the Repayment Agreement to be a novation and that they intended to completely disregard JDH's obligations under the Construction Contract. The Repayment Agreement simply modified the repayment terms of the contract price set forth in the Construction Contract and does not demonstrate an intention by the parties to substitute or discharge the parties of their obligations under the Construction Contract. *Federal Land Bank of Louisville v. Taggart*, 31 Ohio St.3d 8, 14 (1987) (reamortization agreement which merely reschedules a debt does not constitute a novation). "Mere modification of a contract will not suffice in establishing novation. Anything that still remains in effect of the original obligation prevents novation unless the contrary is *particularly expressed or shown by the evidence*."

(Emphasis sic.) *D&G Ents.* at ¶ 27; *Taggart.* The Repayment Agreement neither expressly creates a novation nor implicitly extinguishes the parties' obligations under the Construction Contract. The trial court, therefore, properly rejected JDH's defense of novation.

{¶ 16} JDH next argues the trial court erred in failing to dismiss the Pierces' six counterclaims. Counts 1 through 5 of the Pierces' counterclaims arise from the Construction Contract. Count 6 alleged two separate claims of fraud in the inducement of the Repayment Agreement, to wit, JDH committed fraud by intentionally omitting the amortization schedule from the Repayment Agreement and by falsely representing the amount due under the Construction Contract.

{¶ 17} As it did in its motion for judgment on the pleadings, JDH argues the Pierces' counterclaims related to the Construction Contract must be dismissed because they were not brought within one year of JDH's last date of work as required under Article 15 of the Construction Contract. Likewise, as it did in its motion, JDH further argues that even if the Repayment Agreement omitted the amortization schedule, the Pierces' counterclaim for fraudulent inducement of the Repayment Agreement must be dismissed because the Repayment Agreement ultimately entered into was the Pierces' counteroffer that JDH accepted, and not JDH's initial offer. Thus, the omitted amortization schedule would have been inapplicable because the Pierces counteroffered for a further reduced amount which necessarily would have changed the amortization schedule.

{¶ 18} We decline to address JDH's foregoing arguments. It is rudimentary that questions neither raised nor passed upon by the trial court will not be ruled upon by this court. *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 307 (1980); *Wiethe v. Beaty,* 12th Dist. Warren No. CA99-09-111, 2000 Ohio App. LEXIS 5404, *14 (Nov. 20, 2000). The trial court denied JDH's motion for judgment on the pleadings solely on the ground the Repayment Agreement was not a novation of the Construction Contract. By so ruling, the

trial court thus held that the rights and obligations under the Construction Contract continued even after the Repayment Agreement. However, the trial court never ruled upon the issues above.[1] We therefore decline to address these issues as they were not decided by the trial court.

{¶ 19} JDH's second assignment of error is overruled.

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED JDH'S MOTION TO STAY THE PIERCES' COUNTERCLAIMS PENDING ARBITRATION.

{¶ 22} JDH argues the trial court abused its discretion in denying its motion to stay Counts 1 through 5 of the Pierces' counterclaims pending arbitration. JDH asserts the trial court erred in finding that JDH waived arbitration under Article 15 of the Construction Contract by filing suit to enforce the Repayment Agreement.

{¶ 23} Appellate courts generally review a trial court's decision granting or denying a motion to stay proceedings pending arbitration under an abuse-of-discretion standard. *Northland Ins. Co. v. Palm Harbor Homes, Inc.*, 12th Dist. Clinton No. CA2006-07-021, 2007-Ohio-1655, ¶ 7. Likewise, a trial court's determination that the right to arbitrate has been waived is reviewed on appeal under an abuse-of-discretion standard. *Patrick v. Dixie Imports, Inc.*, 12th Dist. Butler No. CA2017-05-063, 2017-Ohio-9093, ¶ 20.

{¶ 24} Arbitration is a favored method of dispute resolution in the law. *Northland* at ¶ 8, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). The strong public policy in favor of arbitration is codified in R.C. Chapter 2711, Ohio's Arbitration Act, which requires a court to stay an action if it involves an issue covered by an arbitration agreement.

---

1. We note that although the Pierces alleged two separate claims of fraud in Count 6 of their counterclaims, the issue of whether JDH committed fraud in the inducement of the Repayment Agreement by falsely representing the amount due under the Construction Contract, was not argued below. JDH does not raise the issue in its brief.

*Northland* at ¶ 8, citing *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 500 (1998). A party to a contract to arbitrate generally waives that right when it files a lawsuit rather than requesting arbitration. *Land v. J.D. Byrider, Inc.*, 12th Dist. Butler No. CA2006-02-038, 2007-Ohio-1222, ¶ 8, citing *Mills v. Jaguar-Cleveland Motors, Inc.*, 69 Ohio App.2d 111 (8th Dist.1980), syllabus.[2] However, a waiver of the right to arbitrate will not be inferred lightly. *Land* at ¶ 10.

**{¶ 25}** The trial court held that JDH waived its right to arbitration under the Construction Contract by filing suit to enforce the Repayment Agreement. The trial court reasoned that but for the Construction Contract, there would be no Repayment Agreement. Thus, the two documents were clearly linked and Article 15 of the Construction Contract necessarily applied to JDH's lawsuit against the Pierces. That is, because the Repayment Agreement was solely related to amounts due JDH under the Construction Contract, JDH's claim under the Repayment Agreement was essentially one for breach of the Construction Contract and was therefore a waiver of its right to arbitrate claims made under the Construction Contract.

**{¶ 26}** We find the trial court erred in finding JDH waived its right to arbitrate by filing suit to enforce the Repayment Agreement. While there would be no Repayment Agreement but for the Construction Contract, we find that the Repayment Agreement is a promissory note, and thus, a separate, enforceable contract. *Fisk Alloy Wire, Inc. v. Hemsath*, 6th Dist. Lucas No. L-05-1097, 2005-Ohio-7007.

**{¶ 27}** A promissory note is simply an instrument that evidences an agreement to

---

2. "Later cases have interpreted *Mills* to mean that whether a party files a lawsuit, rather than request arbitration, is part of the totality of the circumstances a court should consider and not the determinative factor regarding waiver." *Craver v. Tomsic*, Delaware C.P. No. 13CVH03 0207, 2013 Ohio Misc. LEXIS 3950, *18-19 (Oct. 23, 2013), citing *Milling Away, L.L.C. v. Infinity Retail Environments, Inc.*, 9th Dist. Summit No. 24168, 2008-Ohio-4691, and *Household Realty Corp. v. Rutherford*, 2d Dist. Montgomery No. 20183, 2004-Ohio-2422. In other words, filing a lawsuit is not a per se waiver of the right to arbitrate. *Craver* at *18.

pay a monetary obligation. *Bank of Am. v. Smith*, 1st Dist. Hamilton No. C-130306, 2014-Ohio-2845, ¶ 10. When a party fails to make payment on the note, that party has breached the terms of *that* agreement. *Id.* "It is axiomatic that a promissory note, even though its execution may be a condition of another contract, constitutes a separate enforceable contract." *Fisk* at ¶ 40.

{¶ 28} In *Fisk*, Fisk contracted with Thermotech to build a furnace. Subsequently, Thermotech informed Fisk it was financially unable to complete the furnace because it had spent Fisk's payments on other operating expenses. The parties entered into a restated agreement. The restated agreement was incorporated into the parties' original contract and provided that Fisk would pay directly for materials, which payments would be credited against the purchase price. The restated agreement further provided that any sums advanced by Fisk in excess of the maximum purchase price were to be repaid to Fisk with promissory notes. Costs overruns resulted and Fisk ultimately advanced the sum of $57,196.51 in excess of the contract price in order for the furnace to be completed. Consequently, Thermotech issued two promissory notes to Fisk to cover Fisk's payments in excess of the contract price. However, Thermotech defaulted on the promissory notes and Fisk sued the company, seeking the unpaid balance of the notes. The trial court granted judgment in favor of Fisk.

{¶ 29} On appeal, Thermotech argued that Fisk's action to enforce the promissory notes was barred by the limitations clause of the original contract, which stated: "Any action for the breach of contract arising from this proposal must commence within one year after discovery, but in no event longer than two years after Preliminary Acceptance by [Fisk]." Specifically, Thermotech asserted that because the original contract was incorporated into the restated agreement and execution of the promissory notes was a condition of the restated agreement, the limitations clause applied to and barred Fisk's

action to recover sums due under the promissory notes. The Sixth Appellate District rejected the argument as follows:

> It is axiomatic that a promissory note, even though its execution may be a condition of another contract, constitutes a separate enforceable contract. The limitations clause * * * only applies to actions for breach of contract arising from "this" proposal – prior to the restated agreement, "this" could only refer to the original agreement for appellants to build a furnace for Fisk and for Fisk to pay for it. To the extent that the original agreement was incorporated into the restated agreement, "this" could very well refer either only to the original agreement or to the entire restated agreement. However, we need not solve the ambiguity presented by the referential term because the promissory notes constitute a separate contract, even though their creation was a condition of the contract. Fisk's action to enforce the promissory notes arises independently of the restated agreement, and it is not within the purview of the limitations clause. * * * Fisk seeks to enforce the separate promise to pay contained in the promissory notes.

(Citations omitted.) *Fisk*, 2005-Ohio-7007 at ¶ 40.

{¶ 30} The same is true here. The Repayment Agreement is nothing more than a promissory note evidencing an agreement to pay a monetary obligation and is, therefore, separate and independent of the Construction Contract. *Id.*; *Smith*, 2014-Ohio-2845 at ¶ 10. Just as the limitations clause contained in the original contract did not apply to the enforcement of the promissory notes in *Fisk*, the arbitration provision of the Construction Contract does not apply to the enforcement of the Repayment Agreement herein. JDH's action to enforce the Repayment Agreement arises independently of the Construction Contract and is not within the purview of the arbitration clause of Article 15 of the Construction Contract. Consequently, JDH did not waive its right to demand arbitration of the Pierces' counterclaims under the Construction Contract when it filed suit for breach of the Repayment Agreement, and the trial court's finding otherwise was unreasonable and an abuse of discretion. *See AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990) (most instances of abuse of discretion

result in decisions that are simply unreasonable rather than unconscionable or arbitrary).

{¶ 31} JDH's first assignment of error is sustained.

{¶ 32} Judgment affirmed in part and reversed in part and cause remanded for further proceedings consistent with this opinion.

RINGLAND, P.J., and PIPER, J., concur.