

**E-FILED**
**CNMI SUPREME COURT**
E-filed: Jun 11 2026 05:00PM
Clerk Review: Jun 11 2026 05:00PM
Filing ID: 79719447
Case No.: 2024-SCC-0021-CIV
NoraV Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

*Telesource CNMI, Inc.,*
*Defendant-Appellant,*

*v.*

*SSFM International, Inc.,*
*Defendant-Appellee.*

**Supreme Court No. 2024-SCC-0021-CIV**

---

**SLIP OPINION**

**Cite as: 2026 MP 4**

Decided June 11, 2026

––––––––––––

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
JUSTICE PRO TEMPORE ROBERT J. TORRES, JR.

––––––––––––

Superior Court Action No. 06-0123
Presiding Judge Roberto C. Naraja, Presiding

––––––––––––

M<span>ANGLOÑA</span>, J.:

¶ 1    An arbitrator found Defendant-Appellant Telesource CNMI, Inc. ("Telesource") and Defendant-Appellee SSFM International, Inc. ("SSFM") jointly and severally liable for damages arising out of a poorly constructed housing project. SSFM sued Telesource for contribution, and Telesource cross-claimed for contribution from SSFM. After a trial to determine the parties' respective liabilities, the trial court found SSFM had overpaid its share and ordered Telesource to reimburse SSFM. Telesource appeals. We A<span>FFIRM</span> the order regarding the non-applicability of the Contribution Among Joint Tort-feasors Act and the Uniform Comparative Fault Act and the sufficiency of the factual findings and legal analysis in the decision. We R<span>EVERSE</span> the determination of interest.

## I. F<span>ACTS AND</span> P<span>ROCEDURAL</span> H<span>ISTORY</span>

¶ 2    The Northern Marianas Housing Corporation ("NMHC") contracted to build a low-cost housing project in Tottotville, Saipan. NMHC hired SSFM as the designer, architect, and construction manager and Telesource as the general contractor. After the project was completed, the new residents discovered defects in the houses. The residents and NMHC initiated an arbitration before Judge Perry B. Inos serving as arbitrator. During the arbitration, SSFM called David A. Knox ("Knox") and Telesource called Stephen J. Cox ("Cox") as expert witnesses.

¶ 3    In the Amended Arbitration Award and Judgment ("the Award"), the arbitrator awarded NMHC and the residents $5,459,248.62, holding Telesource and SSFM jointly and severally liable. The Award has forty-eight pages. The arbitrator wrote the first four pages, which state the causes of action and assign specific monetary damages to each of the plaintiffs. The arbitrator signed the fourth page.

¶ 4    The remaining forty-four pages, consecutively numbered with the portion of the Award signed by the arbitrator, are a report from SSFM's expert witness, Knox, calculating damages per individual house. The damages given by the arbitrator match the total damages calculated in Knox's report. The report describes each house individually, listing whether it suffered from nineteen categories of potential damages and providing other notes.[1]

¶ 5    Cox, Telesource's expert witness, created a similar report on the damages per individual house. His calculation of the damages came out the same as

---

[1]    The nineteen types of damages were foundation movement, use of grade 40 rebar, voids in the CMU walls, other CABO violations, water intrusion in wall system, water intrusion through roof, termite damage, plumbing leaks, electrical problems, cracks in ceiling, cracks in roof, cracks in walls, cracks in floor, window leaks, sloped floor, malfunctioning smoke detectors, roof repair required, missing rebar support at windows, and other.

Knox's findings if $20,000 was added to account for draping (installing a moisture barrier to protect a house's foundations) and the final number doubled for the CPA Violation Enhancement.[2] Cox used 45 different categories of damages for each house. His report is not referenced by or attached to the Award.

¶ 6    The arbitrator did not, however, apportion liability between Telesource and SSFM. SSFM settled with the plaintiffs for $3,599,650.45 and Telesource paid the remaining $1,859,598.17 of the award. Telesource and SSFM were unsuccessful in their settlement attempts with each other. Eventually, SSFM sued Telesource for contribution. In the lawsuit, both Telesource and SSFM alleged they had overpaid their share of the arbitration award, and each sought contribution from the other.

¶ 7    At the bench trial before Presiding Judge Roberto C. Naraja, both SSFM and Telesource presented testimony from the same expert witnesses they previously used during the arbitration proceedings: Knox for SSFM and Cox for Telesource. The trial court analyzed each of Knox's defect categories and found SSFM liable for defects from design or supervision and Telesource liable for defects from construction. To the extent fault was mixed, responsibility was divided between the parties.[3]

¶ 8    Based on its analysis of the division of fault, the trial court allocated the $5,459,248.62 award as follows: 24.3% ($1,326,597.42) to SSFM and 75.7% ($4,132,651.20) to Telesource. It found that because SSFM overpaid plaintiffs by $2,273,053.03, Telesource is obligated to reimburse SSFM for that excess

---

[2]    The trial court acknowledged both the cost of draping and the CPA Violation Enhancement as part of the damages in its factual findings, but these damages were not included in Cox's report.

[3]    The court attributed 100% of the foundation movement to construction error; voids in the CMU Walls 95% to construction and 5% to supervision; wall water intrusion 90% to construction and 10% to design; roof water intrusion 50% to supervision and 50% to construction; termite damage; 80% to construction and Telesource's choice of cabinetry and 20% to design; plumbing leaks 100% to construction; electrical problems 100% to construction; ceiling cracks 100% to construction; roof cracks 100% to construction; wall cracks 100% to construction; floor cracks 100% to construction; door/window leaks 90% to construction and 10% to design; sloped floors 100% to construction; malfunctioning smoke detectors 100% to construction; roof repairs 50% to construction and 50% supervision; and missing window rebars 95% to construction and 5% supervision. CABO violations were broken down into five categories: grading was attributed 20% to supervisory error and 80% to construction error, attic access was attributed 20% to supervisory error and 80% to construction error, hallway width was attributed 30% to design and supervisory error and 70% to construction error, closet depth was attributed 100% to construction error, and threshold height was attributed 100% to construction error. Other errors were also addressed individually. Plumbing fixture problems and low water pressure was attributed 100% to construction; uneven interior wall finish 100% to construction; exhaust fan inoperable 100% to construction.

through contribution.

¶ 9     The day after the trial court submitted its factual findings, it entered judgment. In the judgment, the trial court held Telesource liable for interest accruing on its liability to SSFM since 2012. Telesource appealed the factual findings, arguing that the Contribution Among Joint Tort-feasors Act and Uniform Comparative Fault Act barred SSFM from seeking contribution from Telesource and that the trial court had failed to support its factual findings as required by Rule 52(a) of the NMI Rules of Civil Procedure. Telesource later filed a supplemental brief appealing the determination of interest.

¶ 10    SSFM moved to dismiss the appeal, arguing the arbitration agreement precluded appellate jurisdiction over matters decided by the arbitrator. SSFM argues apportioning liability was a continuation of the original arbitration, not a new trial proceeding.

## II. JURISDICTION

¶ 11    We have appellate jurisdiction over final judgments and orders of the Commonwealth Superior Court. NMI CONST. art. IV, § 3; 1 CMC § 3102(a). SSFM argues we should not have jurisdiction as the arbitration agreement precluded appellate review of the arbitration. The arbitration agreement does not apply to subsequent proceedings and does not preclude our appellate review.

## III. STANDARD OF REVIEW

¶ 12    After establishing jurisdiction, the first issue is whether the suit for contribution was barred by statute. This is a question of statutory interpretation and application, reviewed de novo. *See Norita v. Norita*, 4 NMI 381, 383 (1996) (stating statutory interpretation and application are questions of law).

¶ 13    The second issue is whether the trial court's findings of fact and conclusions of law are sufficiently clear to satisfy Rule 52(a) of the NMI Rules of Civil Procedure. The standard of review for the clarity of the findings of fact and conclusions of law is whether the opinion gives an appellate court an understanding of the grounds for the decision. *Manglona v. Kaipat*, 3 NMI 322, 329 (1992).

¶ 14    The third issue is whether the trial court used the correct date for when interest began to accrue. This is a matter of statutory construction and interpretation, reviewed de novo. *Castro v. Telesource CNMI, Inc.*, 2022 MP 7 ¶ 6.

## IV. DISCUSSION

*A.     The Arbitration Agreement Does Not Preclude Appellate Review*

¶ 15    We interpret arbitration agreements according to ordinary contract principles, looking only within the four corners of the contract and giving terms their plain meaning. *NMHC v. BankPacific, Ltd.*, 2021 MP 7 ¶ 14. The arbitration agreement between Telesource and SSFM states "[t]he Judge's decision . . . shall be converted to a judgment or judgments . . . The Judgment(s) shall be final and

binding on the Parties, and shall not be subject to appeal." SSFM contends this agreement included not only the proceeding before Judge Inos which held Telesource and SSFM liable but also the proceeding before Presiding Judge Naraja which determined their respective liabilities.

¶ 16    This argument contradicts the language of the arbitration agreement itself. On the second page, the arbitration agreement provides "the Judge" refers to "Superior Court Associate Judge Perry B. Inos." The agreement lays out a single arbitration proceeding, with specific dates and times for opening arguments, presentation of evidence, and decision making. For example, it states that the parties would make opening statements on Monday, June 4, 2012, at 8:30 a.m. The arbitration agreement did not contemplate additional proceedings before a different judge, at a different time and place. Accordingly, the agreement did not cover the proceedings before Presiding Judge Naraja and does not preclude appellate review of his findings of fact and law.

### B.    Whether 7 CMC § 2904(b) or 7 CMC § 4302(d) Preclude SSFM from Seeking Contribution

¶ 17    Both 7 CMC § 2904(b)[4] and 7 CMC § 4302(d)[5] limit the ability of a settling tortfeasor to seek contribution from a non-settling joint tortfeasor. To determine whether either statute precludes this suit, we must first examine the interaction between their overlapping limitations.

### 1.    7 CMC § 4302(d) Does Not Apply Because It was Superseded by 7 CMC § 2904(b)

¶ 18    Section 4302(d) requires the non-settling party's *liability be extinguished by the settlement* while section 2904(b) merely requires the *liability be extinguished* before the settling party seeks contribution. Section 4302(d) therefore has a more stringent bar to recovery, where only when liability is extinguished by settlement can a settling party seek contribution. Section 2904(b) only requires that the non-settling party be not open to further liability, whether through the settlement or other means. Where possible, courts should harmonize different statutes based on the legislature's intent to give effect to all statutory provisions. *See In re Estate of Pangelinan*, 2019 MP 12 ¶ 14 (recognizing when

---

[4]    The full text of 7 CMC § 2904(b) states: "[c]ontribution is available to a person who enters into a settlement with a claimant only (1) if the liability of the person against whom contribution is sought has been extinguished and (2) to the extent that the amount paid in settlement was reasonable."

[5]    The full text of 7 CMC § 4302(d) states:

> A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor is the tortfeasor entitled to recover in respect to any amount paid in a settlement which is in excess of what was reasonable.

interpreting rules and statutes, courts should harmonize provisions as well as the "general intent of the whole enactment").

¶ 19　　Courts harmonize seemingly contradictory statutes through a number of methods. Ambiguous words in one statute can be interpreted in the way that best favors cohesion with other statutory schemes. *See Circuit City Stores v. Adams*, 532 U.S. 105, 121 (2001) (interpreting "any other class of workers engaged in foreign or interstate commerce" exemption in the Federal Arbitration Act to mean transportation workers, in light of various statutory schemes that provided transportation workers with specific dispute resolution mechanisms). Courts can narrow the applicability of a statute when it would contravene other statutes. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (noting the Environmental Protection Agency reasonably restricted the Endangered Species Act's restriction on agency action to discretionary agency actions to avoid implicitly repealing "many mandatory agency directives"). Narrower statutes can serve as exceptions to broader conflicting statutes. *Nat'l Ass'n of Home Builders*, 551 U.S. at 662–63; *see Guerrero v. Dep't of Pub. Lands*, 2011 MP 3 ¶ 12 (finding a statute creating at-will employment for the Commissioner was an exception to another statute's rule that the Board of Directors can determine the terms of its employee's employment); *Faisao v. Tenorio*, 4 NMI 260, 265–67 (1995) (reading the earlier and narrower Marital Act as allowing spouses to bypass the Probate Code and acquire title to a homestead).

¶ 20　　None of these techniques resolve the contradiction before us now. We have two statutes whose contents are differentiated only by whether liability must be extinguished "by the settlement." Neither section possess an ambiguous term to interpret in a way that resolves their disparate prescriptions. Moreover, sections 2904(b) and 4302(d) are not statutes enacted with the intent of covering different subject areas that happen to overlap in one space. The statutes cover the same subject matter; they have a co-extensive scope. Neither is more specific or general, so the application of one cannot simply be limited in the other's field. One cannot be an exception to the other.

¶ 21　　When there is a "clear and manifest" intent to repeal, a later enacted statute repeals an earlier statutory provision. *See Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981); *see also Faisao*, 4 NMI at 266 (finding that the court's purpose in interpreting ambiguous statutes is to give effect to the intent of the legislature). We have the power to determine the legislative intent of a statute as a matter of law. *Aguon v. Marianas Pub. Land Corp*, 2001 MP 4 ¶ 23.

¶ 22　　When the legislature chooses to omit a term or qualifier it has previously used, courts take the omission to be intentional. *E.g.*, *Cornette v. Dept. of Transp.*, 26 P.3d 332, 339 (Cal. 2001). The legislature adopted section 4302(d) decades before section 2904(b); we presume its awareness of existing, relevant law. *See*

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 722 (2018) (noting Congress is presumed to be aware of existing judicial and administrative interpretations of statutes). Its choice to omit the language that liability must be extinguished "by the settlement" from section 2904(b) was an intentional deviation from the language of section 4302(d). *See Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (stating explicit contradiction of an earlier statute is sufficient to infer a statutory repeal); *Craley v. State Farm & Cas. Co.*, 895 A. 2d 530, 540 (Penn. 2006) (finding a limitation to waiver under one section of a statute should not be imputed to another section without the limit). It would therefore be improper to read section 4302(d)'s requirement liability be extinguished "by the settlement" into section 2904(b).

¶ 23    The legislative history confirms a manifest legislative intent to repeal. Section 4302(d) was originally part of the Trust Territory Code in 6 TTC § 552(4).[6] This provision was enacted as part of the Contribution Among Joint Tort-feasors Act ("CAJTA"). 6 TTC § 551. The CAJTA mirrors the language from the Uniform Contribution Among Tortfeasors Act (1955) (withdrawn 2009), 12 U.L.A. 111 (Supp. 2021). Meanwhile, section 2904(b) was enacted as part of the Commonwealth Uniform Comparative Fault Act ("UCFA") in 2000, which drew on the Uniform Law Commission's (ULC's) UCFA (1977).[7] Section 2904(b) replicates the language of ULC UCFA's section 4(b) verbatim. The Commissioner's Comments to the ULC UCFA says it was "expected" UCFA's section 4 would replace the Uniform Contribution Among Tortfeasor's Act. UNIF. COMPARATIVE FAULT ACT § 4 cmt. (UNIF. L. COMM'N 1977).

¶ 24    This expectation echoes within the legislative history of the Commonwealth UCFA. Both the legislature and the Governor expressed the intention for the Commonwealth UCFA to modify the existing legal framework to better ensure co-defendants would pay in proportion to their fault. P. L. 12-4 § 2; Letter from Pedro P. Tenorio, Governor, N. Mar. I., to the Senate President and Speaker of the House of Representatives, N. Mar. I. Legislature (Oct. 19, 2000) (on file with the Commonwealth Legislature). Contribution is part of how both acts ensured proportional payment by co-defendants. 7 CMC § 2904(b); 7 CMC § 4302(d). The lower barrier to contribution in section 2904(b) reflects a deliberate change to the statutory framework which advanced the legislature's overall goals for the Commonwealth UCFA. Taken altogether, we find the

---

[6]    Many statutes from the Trust Territory of the Pacific Islands, the predecessor to the Commonwealth, carried over into present statutes. In these cases, we can look to the Trust Territory to aid in interpreting the CNMI statutes. *See Robinson v. Robinson*, 1 NMI 81, 88 (1990) (finding that interpretations by the High Court of the Trust Territory is helpful for interpreting a statute that came from the Trust Territory Code); *Est. of Rogolifoi v. Est. of Rogolifoi*, 2024 MP 4 ¶ 39.

[7]    "ULC UCFA" will refer to the uniform act as suggested by the ULC, while "Commonwealth UCFA" will refer to the statute enacted by the CNMI legislature.

legislature clearly intended section 2904(b) to supersede section 4302(d) to the extent the two provisions conflict.

¶ 25    Because the two statutory provisions irreconcilably conflict, the later-enacted provision controls if the earlier provision is not the narrower law. *Faisao*, 4 NMI at 265. Since the two provisions have equal scope and cannot be harmonized, the more recent section 2904(b)'s requirement for extinguishment implicitly repeals section 4302(d)'s requirement that extinguishment must be by a settlement agreement. *See id.* (noting a statute implicitly repeals an earlier statute when and only when the two are in irreconcilable conflict and the intent to repeal is clear and manifest).

> 2.    *7 CMC § 2904(b) Is Satisfied Because the Arbitrator Extinguished Telesource's Liability*

¶ 26    Section 2904(b) provides "[c]ontribution is available to a person who enters into a settlement with a claimant only (1) if the liability of the person against whom contribution is sought has been extinguished and (2) to the extent that the amount paid in settlement was reasonable." Both conditions are met.

¶ 27    To "extinguish" means "to bring to an end" and "to terminate or cancel." *Black's Law Dictionary* (11th ed. 2019). In other words, a party's liability is extinguished when they can no longer be held liable for the plaintiff's original cause of action. *C.f. Medical Getty Oil Corp. v. Duncan*, 721 S.W. 2d 475, 476 (Tex. App. 1986) (holding because the case involved a post-judgment settlement, the non-settling party could not be subjected to further liability and thus the settling defendant could seek contribution).

¶ 28    Telesource's liability was extinguished when the arbitrator established the damages Telesource and SSFM collectively owed the plaintiffs. After the arbitral award, neither NMHC nor the homeowners could bring suit against Telesource for construction defects covered by the arbitration: they would be barred by *res judicata*. *See* RESTATEMENT (SECOND) OF JUDGEMENTS § 84 (1982) (noting that with few exceptions, "a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court"). While the plaintiffs could bring a new suit if Telesource had failed to make payments required by the award, this would be a new suit for a new wrong. *See* RESTATEMENT (SECOND) OF JUDGEMENTS § 18, 18 cmt. a (1982) ("When the plaintiff recovers a valid and final personal judgment his original claim is extinguished and right upon the judgment are substituted for it"). Telesource no longer faced any liability for the housing project, but only for failing to abide by an arbitration award. Accordingly, Telesource's liability was extinguished before SSFM sought contribution and the first requirement of section 2904(b) is satisfied.

¶ 29    Section 2904(b) also conditions a settling party's right to seek contribution on the reasonableness of the settlement. To determine whether a settlement is reasonable, a court considers factors such as the recovery a

plaintiff would have if they succeed at trial, the likelihood of success, the costs of continued litigation, and the response of the parties to the settlement. *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011) (analyzing reasonableness of settlement under eight similar factors). Here, the arbitrator ruled on how much SSFM and Telesource were jointly liable. So long as the settlement did not exceed their established shared liability, it was reasonable. SSFM's settlement with the plaintiffs was just under 66% of the Award and meets the second requirement of section 2904(b). SSFM met both of the necessary statutory prerequisites and may seek contribution from Telesource.

### B. The Trial Court Supported its Factual Findings

¶ 30    Having established SSFM's right to seek contribution from Telesource, we move on to whether the trial court sufficiently supported its findings of fact. Under the NMI Rules of Civil Procedure, following a bench trial, the trial court must make its findings of fact and law separately. NMI R. CIV. P. 52(a)(1). This rule serves three purposes: "(1) [a]s an aide in the process of adjudication; (2) [f]or purposes of res judicata and estoppel by judgment; and (3) [a]s an aide to the appellate court on review." *Olopai v. Fitial*, 3 NMI 101, 107 (1992). Following the Ninth Circuit practice, we have held the trial court does not violate Rule 52(a)(1) if the findings are clear and explicit enough to reveal the basis of the trial court's decision. *Manglona*, 3 NMI at 336–37.

¶ 31    Under this standard, we find the basis for the trial court's decision was clear and understandable. As stated above, the trial court found the parties liable for errors within their own control, and in each type of error, analyzed who had responsibility for what. It explains why one standard was used and not another, under what theories it proceeded, and the basis for its factual findings.

¶ 32    Telesource raises three specific findings of fact as insufficiently supported. These are (1) the use of Knox's calculation as the basis for the arbitral award, (2) construction errors warranted substantially greater fault than inspection or design errors, and (3) Telesource was responsible for all construction work. We address each in turn.

### 1.    The Use of Knox's Calculations as the Basis for the Arbitral Award

¶ 33    The trial court was bound by the underlying arbitration. The parties only brought before it the issue the arbitrator had left unresolved: the percentage of relative fault. Here, the arbitrator attached Knox's—and not Cox's—calculations and notes to the Award, making them part of it. As the trial court was bound to accept what determinations the arbitrator made, it is clear why the trial court treated Knox's figures as the basis for the Award.

### 2.    The Trial Court did not Find Construction Errors Warranted Substantially Greater Fault than Inspection or Design Error

¶ 34    Telesource alleges the trial court found, without explanation, that bad construction causes more damage than bad inspection. This misstates the trial

court's findings. Rather, the trial court went through each category of defect in the houses to determine whether they were likely to result from errors in design, supervision, or construction and apportioned fault between the parties along those lines.

¶ 35    For example, many of the houses were impacted by foundation movement. The trial court described how Knox attributed the foundation movement to inadequate compaction, the responsibility of a general contractor and a difficult error to catch on inspection. The trial court also described Cox's assessment that the foundation movement was instead the result of not accounting for expansive soil under the foundation, a design error by SSFM. The trial court explicitly found Cox's testimony non-credible, relying on evidence that SSFM removed the expansive soil beneath the foundation. Both experts agreed removing expansive soil would have prevented foundation movement due to a design error. Based on the evidence, the trial court determined that the foundation failure was attributable to a construction error and assigned Telesource 100% of the liability for this type of defect. The trial court went through a defect-by-defect analysis, each with a similar level of detail.

### 3.    The Trial Court did not Find Telesource Was Responsible for All Construction Work

¶ 36    Finally, Telesource alleges that the trial court found Telesource did all of the construction work itself when in fact it hired sub-contractors. It argues that in practice, this meant Telesource did supervisory work just as SSFM did and so should only be held liable to the same extent as SSFM. This misstates the trial court's decision. The trial court never found Telesource did all the construction work; it did, however, state Telesource was hired "as the general contractor responsible for construction of the project." It is an established principle under the common law that while a party to a contract may delegate its work, it will still retain ultimate responsibility for delivering what is promised under the contract. RESTATEMENT (SECOND) OF CONTRACTS, § 318 (1981); *Wing-It Delivery Servs. v. V.I. Cmty. Bank*, 47 V.I. 506, 511 (V.I. Dist. Ct., 2005); *see ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 519 (2nd Cir. 2018) (finding actions of a sub-contractor are attributed to the contracting party); *Barcliff, LLC v. M/V Deep Blue*, 876 F.3d 1063, 1074 (11th Cir. 2017) (finding the actions of a sub-contractor are attributed to the contracting party).

¶ 37    As general contractor, Telesource retained responsibility for construction of the Tottotville project even when it delegated actual construction tasks to its subcontractors. *See Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 293–95 (Tenn. 2011) (holding the contractual duty for a contractor to complete construction in a workman-like manner is non-delegable); *JDH Mgmt. Grp., LLC v. Pierce*, 2018-Ohio-706 ¶ 14 (Ohio Ct. App. 2018) (claims of a non-party to a contract being solely responsible for contractual obligations requires showing clear and definite intent to extinguish the original contracting party's obligations). It is not a question of SSFM and Telesource both failing to notice defective work by

subcontractors on supervision. SSFM was contracted to supervise and bears responsibility for supervision-related errors, and Telesource was hired to construct the project and is liable for construction defects. From the decision, it is clear the trial court held both parties for their responsibilities under their respective contracts.

¶ 38    As all the challenged factual findings were supported, we turn to whether the trial court correctly determined the date interest began to accrue.

*C. Interest Began to Accrue When the Trial Court Apportioned Liability*

¶ 39    The trial court determined that interest on the amount owed began to accrue on December 21, 2012, the date SSFM paid the plaintiffs under settlement agreement and was deprived of its money. Interest accrued on the award at nine percent per year from 2012 to 2023, and then three percent per year from 2023 onwards.[8]

¶ 40    SSFM supports the trial court's determination, arguing under *Northern Marianas Housing Corporation v. Flores*, interest begins to accrue when liability is determined even when the details of liability are unknown. This reading is overbroad. In *Flores*, we found that interest on attorney's fees and costs accrued from the date of a judgment establishing liability, not from the later judgment quantifying those amounts. *N. Marianas Hous. Corp. v. Flores*, 2006 MP 23 ¶ 7. We emphasized interest should fall on the party who created the circumstances giving rise to the damages. *Id.* ¶ 8.

¶ 41    This situation is distinct from Flores and its reasoning is not applicable in this context. Liability cannot be said to have attached because Telesource's individual responsibility for the award had not been established. Until the trial court resolved apportionment of fault and entered judgment, neither party had any obligation to reimburse the other. Because no 'damages' were owed, neither was any interest on those damages. Title 7 of the Commonwealth Code, section 4101 applies to judgments establishing liability, not to preliminary determinations that leave responsibility unresolved.

¶ 42    The policy rationale supporting the accrual of interest is not present on these facts, as this is not a case in which a culpable defendant deprived an innocent party of the use of its funds. Rather, both SSFM and Telesource were found responsible for the underlying harm, and the dispute concerned how liability should be allocated between them.

---

[8]    Until the legislature passed Public Law 21-1 in 2023, CNMI law prescribed an interest rate on nine percent a year on judgments for the payment of money. Public Law 21-1 changed the interest rate to three percent per year, for each year after its enactment. 7 CMC § 4101.

¶ 43     The trial court issued its findings of fact on March 7, 2023, and Telesource's duty to pay commenced at that time. Thus, interest should begin accruing from that date.

## V. CONCLUSION

¶ 44     The trial court correctly permitted SSFM to seek contribution from Telesource and it had sufficiently clear and explicit findings that conformed with the requirements of Rule 52(a) of the NMI Rules of Civil Procedure. On these matters, we AFFIRM the trial court. However, it did not use the correct date for the calculation of interest: interest should have begun to accrue on the date the trial court made its findings of fact. We therefore REVERSE the trial court's determination on the interest owed by Telesource.


SO ORDERED this 11th day of June, 2026.


/s/
ALEXANDRO C. CASTRO
Chief Justice


/s/
JOHN A. MANGLONA
Associate Justice


/s/
ROBERT J. TORRES, JR.
Justice Pro Tempore


COUNSEL

Joseph E. Horey, Saipan, MP, for Defendant-Appellant.

Brien Sers Nicholas, Saipan, MP, for Defendant-Appellee.

NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it remains subject to revision or withdrawal. If any discrepancies arise between this slip opinion and the opinion ultimately certified for publication, the certified opinion will control. Readers are requested to bring any errors to the attention of the Clerk of the Supreme Court at P.O. Box 502165 Saipan, MP 96950; telephone (670) 236–9715; or e-mail Supreme.Court@NMIJudiciary.gov.



E-FILED
CNMI SUPREME COURT
E-filed: Jun 11 2026 05:00PM
Clerk Review: Jun 11 2026 05:00PM
Filing ID: 79719447
Case No.: 2024-SCC-0021-CIV
NoraV Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**TELESOURCE CNMI, INC.,**
*Defendant-Appellant,*

***v.***

**SSFM INTERNATIONAL, INC.,**
*Defendant-Appellee.*

---

**Supreme Court No. 2024-SCC-0021-CIV**
Superior Court Civil Action No. 06-0123

### JUDGMENT

Defendant-Appellant Telesource CNMI, Inc., appealed the trial court's order finding it responsible for 75.7% of an arbitration award. For the reasons set forth in the accompanying opinion, the Court REVERSES in part and AFFIRMS in part.

ENTERED this 11th day of June, 2026.


  /s/
_____
JUDY T. ALDAN
Clerk of the Supreme Court